No. 32,936

Morris H. Kaufman, *Appellee*, v. The Kansas Power & Light Company, *Appellant*.

(58 P. 2d 1055)

 Opinion
filed July 3, 1936. 

Thomas F. Doran, of Topeka, and James M. Challiss, of Atchison, for the appellant; Harry W. Colmery, Clayton E. Kline, M. F. Cosgrove, all of Topeka, W. P. Waggener and O. P. May, both of Atchison, of counsel.

Charles T. Gundy, Maurice P. O'Keefe, Steadman Ball and Philip O. Shrack, all of Atchison, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for damages for personal injuries alleged to have resulted from an assault. A jury trial resulted in judgment for plaintiff. Defendant has appealed and, among other points, contends that there was no evidence of an assault sufficient to sustain the judgment.

In his petition plaintiff alleged that on a date named defendant sent to the home of plaintiff's parents, where he resides, four of its employees to disconnect, repossess and take out of the house an electric refrigerator owned by plaintiff's father; that they had no court order authorizing them to do so; that they entered the house without permission and started to disconnect and take possession of the refrigerator; that plaintiff was alone in the house, was shaving and not fully dressed; that he remonstrated with defendant's employees and forbade them to take the refrigerator, and ordered them to cease their trespass onto the property in which the refrigerator was located; that one of the employees telephoned an executive of defendant, under whose direction they were acting, who directed the employee to proceed with the repossession and removal of the refrigerator, after being informed that there were four of the employees present and no one else other than plaintiff; that the em-

ployees were strong, able-bodied men armed with metal tools; that they advised plaintiff they would proceed to repossess the refrigerator, and warned plaintiff not to interfere with them, threatening him with the metal tools in a menacing fashion; that the employees, possessing the present ability to carry out their threats, put plaintiff in fear for his safety and caused him great mental pain, suffering and humiliation, and that they proceeded with their work until stopped by certain peace officers. It was further alleged the acts of defendant and its employees were willfully, maliciously and wantonly done, without just cause and without legal authority, all to his damage in a sum named.

The answer denied all allegations not specifically admitted and alleged that plaintiff had no title to or possession of the refrigerator; that the title and right of possession was in defendant; that on July 29, 1931, L. Kaufman, plaintiff's father entered into a written contract with defendant for the purchase of the refrigerator, to be paid for in ninety days, which written contract, among other things, provided:

"Until the purchase price has been fully paid, the title, ownership and right of possession in and to said property is and shall remain vested in the company. The purchaser agrees to use said property carefully . . . and not to suffer any other person to have possession, custody or control of it; . . . to allow said company, or its agents or employees, at all reasonable times to enter the premises where said property or any part of it is situated and examine the same; that if default shall be made in any of said payments, . . . said company shall have the right, at its election and without previous notice thereof, to declare all sums then remaining unpaid on account of said purchase price to be due and payable at once, and said company is further authorized and empowered to forthwith take possession of the same without let or hindrance by, or demand of any kind upon said purchaser, or any other person."

The payments previously made to be retained by the company as rental for the use of the property.

It was further alleged that L. Kaufman neglected to pay the amount due on the refrigerator within the time stated in that contract, and that on January 15, 1932, defendant entered into a new contract with L. Kaufman, like the original in all respects except that L. Kaufman agreed to pay for the refrigerator by installment payments of $8.92 per month, and there was added to the original purchase price a sum for interest and carrying charges. It was further alleged that L. Kaufman had neglected to make many of the installment payments as they became due, but frequently made

default; that on December 13, 1934, L. Kaufman, being then in default, and the defendant company still having title to the refrigerator, it did proceed to repossess the same; that its agents and employees proceeded to the residence of L. Kaufman, and with the consent of a member of his family, entered the premises and proceeded to disconnect and remove the refrigerator, when plaintiff, without any right or authority to do so, attempted to prevent them from removing the refrigerator.

In his reply plaintiff admitted that his father had purchased the refrigerator as alleged in the answer and that at the time of the acts complained of in his petition there was due on the contract mentioned a sum stated, and that the defendant did proceed to repossess the refrigerator, and that its agents and employees went to the home of plaintiff's father for the purpose of doing so. The reply specifically denied defendant's servants entered the premises of L. Kaufman on the invitation of anyone, and alleged that they entered without permission and without an order from any court authorizing them to do so. It further specifically denied plaintiff interfered with defendant's agents and employees with any idea of seeking trouble with them, and alleged that he attempted to prevent them from removing from his home property which had been left in his possession.

The testimony on behalf of plaintiff was to this effect: Shortly after eight o'clock the morning of December 13, 1934, Richard Francis and three other men, all being agents and employees of defendant, went to the home of L. Kaufman and knocked at the back door. Plaintiff's brother Herbert, about twelve years of age, was eating breakfast alone. He saw the men come to the door and heard them knock. He went to the door, opened it and asked the men what they wanted. They said they had come for the refrigerator. He said, "Wait a minute," and went to call his sister Selma, about fifteen years of age, who was in a front room. While doing this he had left the door open and defendant's employees went into the kitchen, or breakfast room. The refrigerator was in a small room near by. When Selma came the men were in the breakfast room. She asked them what they wanted. They said they had come to get the refrigerator. She said she would call her brother, the plaintiff, and went upstairs to do so. He was shaving, getting ready to go to the office, but came downstairs immediately. Soon thereafter Selma and Herbert left to go to school. The father and mother were not at home. Plaintiff was alone with defendant's em-

ployees. In the meantime they had opened the refrigerator and had taken part of the contents out and placed it on the table. They had with them a small two-wheeled hand-propelled truck on which to load the refrigerator. Plaintiff asked them what they wanted. Francis, whom plaintiff knew, and who appeared to be the foreman and the spokesman of defendant's employees present, said they were sent for the refrigerator, that they were instructed by the office to get it because there were payments due on it. Plaintiff asked if they had a court order for it and was informed they did not. Plaintiff then told them they had no right to take it without an order from the court. There was some further discussion. Plaintiff told them he happened to be an attorney and knew his rights, and that they had no right to take it over his protest without a court order. He asked them to leave. They made no move to do so. Plaintiff then stepped to the back door, which had been closed by someone, and locked it by turning a bolt from the inside and said he was not going to let the refrigerator go out of that door. He then went to the telephone near the front of the house and called defendant's office and talked with Mr. McFadden, an executive of the company who had supervision of collection of accounts for defendant and who had given orders to Francis for repossession of the refrigerator. Plaintiff told McFadden there were four men there taking out the refrigerator, that he had ordered them out of the house, and asked McFadden to have them leave, as they were trespassing on private property. McFadden told him there was $17.70 due on the refrigerator and if he could be assured that would be paid that day he would tell the men to leave. Plaintiff said both his parents were out of town, that he did not know just when they would return, but in a day or two, and as soon as his father returned the sum would be paid. That was not satisfactory to McFadden. Plaintiff then advised a replevin suit and told McFadden he had no right to take the refrigerator without bringing such a suit. McFadden replied that he did not want to go to the expense of a replevin suit and he would take it under the contract. He asked to talk with one of his men. Francis talked with him and said plaintiff was raising a fuss about taking out the refrigerator and asked if he should go ahead and take it out. He told McFadden there were four men there and no one else besides plaintiff. Francis then reported to plaintiff that his boss had said to go ahead and take the refrigerator, and walked back to where the other men were.

Plaintiff again asked the men to leave and told them they could not take it without a court order. They did not pay much attention to him; they took some tools from their pockets and acted as if they were going ahead to disconnect the refrigerator and take it out. At some time when plaintiff was telling the men what they did not have a right to do Francis replied, "That is what you think." At the time he said this he had a screw driver in his hand. Plaintiff testified the men talked in a very determined manner, that he was afraid of them, afraid they would hit him with their tools or their fists. He went back to the telephone. He called the chief of police and asked him to send someone down. He also called the judge of the city court and asked him to send a blank complaint and warrant. He also called his attorney, who later appeared for him in the case. A policeman came to the house. Defendant's men were in the back room and said they were going to remove the refrigerator. He asked if they had any papers and they said they had a paper they brought from the office. They did not show any court paper. He told them he did not think they could take it without court papers. Mr. Carter, marshal of the city court, also went to the house with a blank complaint and warrant. Plaintiff started to fill out a complaint. Carter asked defendant's men what they were doing there and was told they were there for the refrigerator. He told them they better call their boss so they would get some papers out and was told that the contract provided they could take it. Carter then called McFadden and asked him if he would not wait and get out some papers in a replevin suit. McFadden replied that the contract provided they could take it on default, and to tell the boys to go ahead. He told McFadden plaintiff was going to get out a warrant for them and they would all be in jail. Plaintiff then asked to talk to McFadden and told him that he would be down to the office in the afternoon and see that the sum due was paid. McFadden then told his men to quit, and after putting the refrigerator in order and putting the food back into it they left.

Plaintiff further testified that he was nervous and afraid to interfere with the men; that they knew he was alone and that he could not overcome the four of them; that this feeling of nervousness did not leave him for two or three days and he could not concentrate on his work; that he would meet persons on the street who would ask him about it, and this would bring the whole thing back to his mind; that some people joked him and he felt humiliated.

Plaintiff also testified that so far as he knew, neither the defendant company nor any of the men there had any ill will or malice toward him personally.

Quite a little was said in the oral arguments and briefs about the right of the defendant company, under the circumstances, to send its men into the house to repossess the refrigerator. We cannot determine that question in this action. Plaintiff's father, L. Kaufman, one of the parties to the contract for the purchase of the refrigerator, is not a party to this action. He is not here making any complaint about the conduct of defendant, its agents, servants, or employees. Plaintiff testified that he knew nothing at that time about the contract between defendant and his father, nor the rights of the parties under it. More than that, plaintiff in his reply admitted that L. Kaufman had purchased the refrigerator under the contract pleaded by defendant in its answer; that there had been defaults in payment, and that a stated sum was due at the time the men were sent to repossess it. Therefore, for the purposes of this case, it must be assumed and held that defendant, under its contract with L. Kaufman, on which payments were in default, had the unquestioned right to repossess the refrigerator and to send its employees into the home of L. Kaufman for that purpose. The simple protest of L. Kaufman, had he been present, would not have destroyed that right, nor would it be destroyed by the protest of someone else not a party to the contract. Neither is this a case in which the defendant, or any of its agents, servants, or employees is charged with trespass, or with disturbing the peace.

Plaintiff predicates this action solely upon the ground that he personally was assaulted by defendant's agents and employees, and that as a result of such assault he sustained personal injuries for which he should recover in damages. Appellant contends the evidence does not sustain that ground of recovery, that it shows no assault upon plaintiff personally and no personal injuries sustained by him as a result of an assault. This contention must be sustained. Evidence on behalf of plaintiff is barren of any language or conduct of any of defendant's agents or employees indicating a threat or an intent on their part to do personal harm to plaintiff. They used no rough or boisterous language toward plaintiff, and aside from stating what their business was and why they were repossessing the refrigerator the evidence discloses but one statement by any of them indicating a disagreement with plaintiff's stated views as to their

right to take the refrigerator. That was when Francis replied, "That is what you think." It is fair to defendant to say that Francis in his testimony denied making that statement. But we pass that, since it was the function of the jury and the trial court to pass upon conflicting testimony. Considering the matter as testified to by plaintiff, there is nothing in that remark indicating a purpose or intent to do plaintiff any physical harm. It is in evidence that when Francis made that remark he had a screw driver in his hand, but there is nothing in the evidence indicating he so held or handled the screw driver as to threaten or menace plaintiff with it in any way. On the other hand, the evidence indicates that he had it for the simple purpose of disconnecting the refrigerator or taking it apart so it could be moved.

Appellee argues there was an assault upon him personally by reason of the fact that four of defendant's employees were in the house with the announced purpose of taking the refrigerator out, which they had started to do, while he was there alone; hence, if a physical encounter should take place between them he would be outnumbered and overpowered, possibly might be hit or injured, and that McFadden, knowing that four of defendant's men were there and that he was alone, gave or renewed his order for his men to take the refrigerator. As we have heretofore seen, under the pleadings in this case and the record before us, defendant had a right to repossess the refrigerator, from which it necessarily follows that McFadden had the right to give the order for its repossession and defendant's men had the right to go there and disconnect the refrigerator and take it away; hence the mere fact that those things were being done constituted no infringement of plaintiff's rights. In and of themselves they could not constitute an assault upon plaintiff. McFadden could not assault plaintiff over the telephone by telling plaintiff what defendant's rights were under the contract and the steps he thought he was authorized to take in carrying it out. Neither could defendant's employees assault plaintiff by the mere fact that they went into the house as they did, and by stating their purpose to repossess the refrigerator, and going quietly about doing that and nothing more. The fact that plaintiff became agitated over the situation and called the officers and others, and became nervous over it for a few days, and was later humiliated by remarks of his acquaintances respecting the matter, did not convert the lawful, orderly conduct of defendant's agents and em-

ployees into an assault upon him with the purpose and intent or the necessary result of doing him personal injury.

Defendant's demurrer to the evidence should have been sustained. We deem it unnecessary to state a definition of assault, with its variations, or to analyze the many cases dealing with the question. It is sufficient to say we have examined all the authorities cited by counsel and we find no definition of the term assault and no decided case which, in our opinion, would support a judgment for plaintiff in this action.

The judgment of the court below is reversed with directions to render judgment for defendant.