No. 47,761

Don Benschoter, *Appellant,* v. First National Bank of Law-
rence, A Corporation, and Kuhn Truck & Tractor Company,
Inc., A Corporation, *Appellees.*

(542 P. 2d 1042)

Opinion filed November 8, 1975.

*Jane B. Werholtz,* of Harley & Werholtz, of Topeka, argued the cause and was on the brief for the appellant.

*Richard L. Zinn,* of Barber, Emerson, Six, Springer & Zinn, of Lawrence, argued the cause, and *Thomas V. Murray,* of the same firm, was with him on the brief for the appellee, The First National Bank of Lawrence.

*Gerald L. Cooley,* of Allen & Cooley, of Lawrence, argued the cause, and was on the brief for the appellee, Kuhn Truck and Tractor Company, Inc.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the trial court granting a creditor judgment thereby affirming the creditor's "self-help" repossession of the plaintiff's property (pledged as security for a loan) pursuant to K. S. A. 84-9-503. The provision of that statute in the Uniform Commercial Code pertinent to this appeal reads:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . ."

The facts leading to the challenged "self-help" repossession are not complicated. Don Benschoter (plaintiff-appellant) is a farmer and security guard in Lawrence, Kansas. On June 15, 1971, he negotiated a loan from Mr. Warren Rhodes, president of the First National Bank of Lawrence (hereafter referred to as the Bank). The appellant signed a $4,096.73 promissory note and security agreement secured by various items of farm equipment: a combine, a grain drill, a hay conditioner and a cadet mower. This security agreement gave the Bank "the remedies of a secured party under the Kansas Uniform Commercial Code" and specifically provided that "upon default Secured Party [Bank] shall have the right to the immediate possession of the Collateral." The seller of the farm equipment which was pledged as security, Kuhn Truck and Tractor Company, Inc., (hereafter referred to as the Kuhn Company) endorsed the bank note evidencing the loan as guarantor.

The appellant met his payment obligations, although frequently late, until July 1, 1972. On July 1, 1972, a $900 payment was due. The appellant paid only $400. That $400 payment was made to Kuhn Company who paid the $400 plus the remaining $500 still due to the Bank.

On September 1, 1972, a $300 payment was due but never made. Shortly prior to this time Louis Kuhn, an officer of the Kuhn Company, had started out to the appellant's home to obtain the $500

owed on the July 1, 1972, payment. On the way he met the appellant and discussed the $500 owed and the approaching $300 payment. The appellant indicated he couldn't meet Mr. Kuhn's demands that day but he might have the money on Saturday, September 2, 1972. At that time the appellant said, "if I can't get the money, I'll bring it [the farm equipment] back." The bank had previously informed the appellant that unless payments were made, Mr. Kuhn would be asked to pick up the equipment. Mr. Kuhn testified he repeated that warning saying:

". . . Don, what are we going to work out on this equipment that you owe us for? . . ."

The appellant replied:

". . . I'm just to the point where I don't think I can do anything. Things have gone against me, and I'm just going to have to let you have it all back. There is no way I can pay for it, there is no way I can pay for it. I'm just going to let you have it back. . . . I'll bring the equipment in to you. I can't bring it in tomorrow. I can't bring it in tomorrow, but I'll bring it in Saturday. . . ."

Mr. Kuhn said:

". . . Don, if you don't bring the equipment in, we are going to have to come and get it. . . ."

The appellant replied:

". . . *That's all right. If I don't bring it in to you, you come on out and get it.* . . ." (Emphasis added.)

On Tuesday, September 5, 1972, not having received any money from the appellant, Louis Kuhn and an employee went to the appellant's home. Both the appellant and his wife were away from the home but their three children, ages seventeen, fifteen and thirteen were home. Mr. Kuhn went to the door of the appellant's house and asked the children to let him pick up the secured farm equipment. The hay conditioner was in the driveway in front of the barn. The cadet mower was in the barn. The appellant's seventeen-year-old son opened a padlocked gate protecting the equipment and helped them get the mower from the barn. The son also gave Mr. Kuhn a carburetor which was not part of the secured property.

The appellant admits Mr. Kuhn never struck or threatened his children. But he contends the taking was without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

The trial court sustained the appellees' motion for summary judg-

ment holding: (1) The self-help provisions of K. S. A. 84-9-503 did not violate constitutional due process; (2) that no legal question existed as to whether the appellee Kuhn Company had breached the peace by the use of "stealth"; and (3) that the appellee Kuhn Company as a guarantor of the appellant's obligation to the bank was subrogated to the rights of the bank and became a secured party and thus had a right to repossess the property.

The points assigned by the appellant for review challenge each of the rulings made by the trial court.

The appellant first argues the due process requirements of the Fourteenth Amendment of the United States Constitution require that he should have been given notice and a prior hearing. The due process clause of the Fourteenth Amendment of the United States Constitution reads:

". . . [N]or shall any State deprive any person of life, liberty, or property, without due process of law. . . ."

Under this clause, state action is necessary to invoke the Fourteenth Amendment. Acts of private individuals, however discriminatory or wrongful, are outside the scope of the Fourteenth Amendment. (*Shelley v. Kraemer,* 334 U. S. 1, 13, 92 L. Ed. 1161, 68 S. Ct. 836.)

The state action test is generally met when conduct formerly private becomes so entwined with governmental policies and so impregnated with governmental character as to become subject to the constitutional limitations placed upon state action. (*Evans v. Newton,* 382 U. S. 296, 299, 15 L. Ed. 2d 373, 86 S. Ct. 486.) The courts have never attempted the impossible task of formulating an infallible test for determining whether the state in any of its manifestations has become significantly involved in private conduct. (*Reitman v. Mulkey,* 387 U. S. 369, 378, 18 L. Ed. 2d 830, 87 S. Ct. 1627.) Only by sifting facts and weighing circumstances on a case-by-case basis can a non-obvious involvement of the state in private conduct be attributed its true significance. (*Burton v. Wilmington Parking Authority,* 365 U. S. 715, 722, 6 L. Ed. 2d 45, 81 S. Ct. 856; and *Reitman v. Mulkey,* supra, at 378.)

The appellant's primary argument is that the state has passed a law which authorizes or encourages "self-help repossession" so state action must be present. But the Federal Circuit Courts have unanimously rejected this argument. (*Shirley v. State National Bank of Connecticut,* 493 F. 2d 739 [2nd Cir. 1974], cert. denied, 419 U. S. 1009, 42 L. Ed. 2d 284, 95 S. Ct. 329; *Gibbs v. Titelman,* 502

F. 2d 1107 [3rd Cir. 1974], cert. denied, 419 U. S. 1039, 42 L. Ed. 2d
316, 95 S. Ct. 526; *James v. Pinnix*, 495 F. 2d 206 [5th Cir. 1974];
*Turner v. Impala Motors*, 503 F. 2d 607 [6th Cir. 1974]; *Bichel Optical Lab., Inc. v. Marquette Nat. Bk. of Mpls.*, 487 F. 2d 906 [8th
Cir. 1973]; *Nowlin v. Professional Auto Sales, Inc.*, 496 F. 2d 16
[8th Cir. 1974], cert. denied, 419 U. S. 1006, 42 L. Ed. 2d 283, 95
S. Ct. 328; and *Adams v. Southern California First National Bank*,
492 F. 2d 324 [9th Cir. 1974], cert. denied, 419 U. S. 1006, 42 L. Ed.
2d 282, 95 S. Ct. 325.)   The state courts have also unanimously
rejected this contention.   (*Kipp v. Cozens*, 40 Cal. App. 3d 709, 115
Cal. Rptr. 423 [1974]; *John Deere Company of Kansas City v.
Catalano*, ____ Colo. ____, 525 P. 2d 1153 [1974]; *A & S Excavating, Inc. v. International Harvester Credit Corp.*, 31 Conn. Supp. 152,
325 A. 2d 535 [1974]; *Giglio v. Bank of Delaware*, 307 A. 2d 816
[Del. Ch. Ct. 1973]; *Northside Motors of Florida, Inc. v. Brinkley*,
282 So. 2d 617 [Fla. 1973]; *Hill v. Mich National Bank*, 58 Mich.
App. 430, 228 N. W. 2d 407 [1975]; *Messenger v. Sandy Motors, Inc.*,
121 N. J. Super. 1, 295 A. 2d 402 [1972]; *C. L. Brown v. U. S. Nat'l.
Bank*, 265 Or. 234, 509 P. 2d 442 [1973]; and *Cook v. Lilly*, 208 S. E.
2d 784 [W. Va. 1974].)   Of the many federal district court decisions,
only *Watson v. Branch County Bank*, 380 F. Supp. 945 (W. D. Mich.
1974) supports the appellant's argument.

One reason for the almost unanimous acceptance of self-help repossession is that 84-9-503, *supra*, did not change the common law
or the previously codified statutory law.   The right to peaceful
self-help repossession of property under circumstances such as are
here involved, far from being a right created by 84-9-503, *supra*, has
roots deep in the common law.   (2 F. Pollock and F. Maitland, The
History of English Law, 574 [2d Ed. 1899], and 2 Blackstone, Commentaries on the Laws of England, 857-858 [4th Ed. T. Cooley,
1899].)

Prior to the enactment of K. S. A. 84-9-503, K. S. A. 58-307 (prior
source, G. S. 1868, ch. 68, § 15) provided:

"In the absence of stipulations to the contrary, the mortgagee of personal
property shall have the legal title thereto, and the right of possession."

Prior cases permitted a mortgagee to use self-help to gain possession
if done without a breach of the peace.   (*Motor Equipment Co. v.
McLaughlin*, 156 Kan. 258, 133 P. 2d 149; and *Kaufman v. Kansas
Power & Light Co.*, 144 Kan. 283, 58 P. 2d 1055.)   Therefore, K. S. A.

84-9-503 injects no new element upon which a finding of state action may be based.

Had K. S. A. 84-9-503, *supra,* changed our law, a finding of state action would still not be required. (*Adams v. Southern California First National·Bank,* supra, and *Gary v. Darnell,* 505 F. 2d 741 [6th Cir. 1974].) Statutes regulate many forms of private activities in some manner or another. Subjecting all behavior that conforms to some statute to complete due process guarantees would emasculate the state action concept and create chaos in our society. (*Adams v. Southern California First National Bank,* supra, at 330, 331; and *Gibbs v. Titelman,* supra, at 1112.) Recent United States Supreme Court cases have held that conforming to some state regulation is not sufficient state action to trigger application of the Fourteenth Amendment. (*Moose Lodge No. 107 v. Irvis,* 407 U. S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965 [conforming to liquor regulations]; and *Jackson v. Metropolitan Edison Co.,* 419 U. S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 499 [conforming to utility tariffs].) The same is true when a creditor conforms to 84-9-503, *supra;* no state action is present.

The appellant relies on *Reitman v. Mulkey,* supra, in attempting to find state action. That case dealt with racial discrimination in the sale and rental of property. Previously, California had adopted legislation prohibiting discrimination in the sale and rental of property. Later, a constitutional amendment was enacted which provided that neither the State of California nor its agents or subdivisions could prevent a person from selling or renting his property to whomever he chose. The effect of the amendment was to overturn the prior anti-discrimination statutes. The United States Supreme Court held the amendment operated to significantly encourage and involve the state in private discrimination. As such, state action was present and the amendment held unconstitutional. The appellant argues 84-9-503, *supra,* encourages private action. Yet, *Reitman* and 84-9-503, *supra,* are distinguishable.

A primary basis for distinction is the fact *Reitman* deals with racial discrimination, a consideration not present here. The historical and fundamental purpose of the Fourteenth Amendment— to eradicate racial discrimination—is not involved in creditors' rights cases. As stated by Judge Friendly's concurrence in *Coleman v. Wagner College,* 429 F. 2d 1120 (2d Cir. 1970):

". . . [R]acial discrimination is so peculiarly offensive and was so much a prime target of the Fourteenth Amendment that a lesser degree of involve-

ment may constitute 'state action' with respect to it than would be required in other contexts. . . ." (p. 1127.)

(See also, *Kirksey v. Theilig,* 351 F. Supp. 727 [D. Colo. 1972]; *Adams v. Southern California First National Bank,* supra; and *Grafton v. Brooklyn Law School,* 478 F. 2d 1137, 1142 [2nd Cir. 1973].)

Second, *Reitman* involved a change in the existing law. Here there has been no change in the law of repossession as previously indicated.

Third, *Reitman* dealt with a state constitutional amendment which "encouraged" private action. The general question of whether a state statute, authorizes, establishes, or encourages private action is explored in Burke and Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 46 S. Cal. L. Rev. 1003 (1973), and 47 S. Cal. L. Rev. 1 (1973). The authors concluded, after discussing *Reitman* and other cases, that a state statute which authorizes and thereby arguably encourages private conduct does not automatically render that conduct state action.

For example, K. S. A. 77-109 indicates the common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state. Had 84-9-503, *supra,* not existed, surely the appellant would not contend that passage of this statute giving force to the common law right of repossession meant state action was present.

Similarly, the appellant could not successfully argue this state's previous judicial decisions, such as *Motor Equipment Co. v. McLaughlin,* supra, and *Kaufman v. Kansas Power & Light Co.,* supra, which permitted self-help repossession, change the former private action to state action. The state acts in deciding a case, but its decisional law which may encourage private action does not automatically become action colorable under the Fourteenth Amendment. Such a ruling would convert the doctrine of *stare decisis* into a vehicle to open all private orders for due process review.

In summarizing and explaining their conclusion that mere authorization and resulting encouragement does not necessarily result in private action becoming state action, Burke and Reber state:

"In determining whether fourteenth amendment state action is present, the focus should always be upon the actual impact of the state law upon the choice to engage in the private conduct. Unless the state law dictates the choice to be made by the party or in some way significantly interferes with the free exercise

of that choice, the private conduct and state law are not subject to constitutional restraints under the fourteenth amendment. State laws of a permissive character which authorize private conduct, and because of such authorization perhaps also encourage such conduct, do not satisfy the fourteenth amendment's state action requirement. To adopt 'authorization' or 'encouragement' in this context as a relevant state action inquiry would subject virtually every form of private ordering pursuant to state statutory, executive and judicial law to constitutional review in the federal courts. . . ." (p. 1109.)

Under this analysis, K. S. A. 84-9-503 cannot be said to significantly encourage and involve the state in private action.

Appellant further relies on several of the more modern creditors' rights cases. *Sniadach v. Family Finance Corp.*, 395 U. S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (prejudgment garnishment of wages); and *Fuentes v. Shevin*, 407 U. S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (prejudgment replevin statute). These decisions of the United States Supreme Court reversed state laws which allowed state agents, the state court in *Sniadach* and the sheriff in *Fuentes*, to seize property without prior notice and prior hearings.

Here no state official, be he judge, clerk of the court or police officer, is involved in the prejudgment self-help repossession of the collateral. As such no state action is present. *C. L. Brown v. U. S. Nat'l. Bank*, supra. Even *Fuentes* recognized this when it noted:

"The creditor could, of course, proceed without the use of state power, through self-help, by 'distraining' the property before a judgment. . . ." (p. 79, n. 12.)

The exact nature of the due process guarantees in creditors' rights cases is not clear. (Compare *Mitchell v. W. T. Grant Co.*, 416 U. S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895, with *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U. S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719.) However, that does not concern us here because no state action is present.

Only *Watson v. Branch County Bank*, 380 F. Supp. 945 (W. D. Mich. 1974) presently supports the appellant. That case may be distinguished from the case at bar as involving automobile repossession and state "ratification" of private action by transferring title to the repossessed automobile. However, many of the Federal Circuit Court cases heretofore cited are factually analogous to *Watson*, suggesting it may have a short life. Some cases have acknowledged *Watson's* existence, but refuse to adopt its reasoning. (*King v. So. Jersey Nat. Bank*, 66 N. J. 161, 169, 330 A. 2d 1, 5 [1974].) Even subsequent Michigan state appellate court opinions

do not find *Watson* persuasive. (*Hill v. Mich National Bank,* 58 Mich. App. 430, 228 N. W. 2d 407 [1975].)

The appellant suggests that the better course of action would be for the bank and other secured parties to institute legal proceedings pursuant to K. S. A. 84-9-503, under which "the secured party" may "proceed by action." However, that is not necessary. The secured party may choose the remedy it wishes; either self-help repossession or judicial action in accordance with the due process guarantees of the Fourteenth Amendment.

Commentaries on the practical and economic aspects of self-help repossession make a strong argument that absent self-help repossession credit would be more restricted or would cost more or both. (Mentschikoff, Peaceful Repossession Under the Uniform Commercial Code: A Constitutional and Economic Analysis, 14 Wm. & Mary L. Rev. 767 [1973]; Johnson, Denial of Self-Help Repossession: An Economic Analysis, 47 S. Cal. L. Rev. 82 [1973]; and White, The Abolition of Self-Help Repossession: The Poor Pay Even More, 1973 Wis. L. Rev. 503.)

Debtors are not without remedy. If the bank or secured party repossesses before default, or breaches the peace during repossession after default, it may be liable for damages. (*Klingbiel v. Commercial Credit Corporation,* 439 F. 2d 1303 [10th Cir. 1971]; *Ford Motor Credit Co. v. Waters,* 273 So. 2d 96 [Fla. App. 1973]; and *Jerman v. Superior Court,* 245 C. A. 2d 852, 54 Cal. Rptr. 374 [1966].) (See also, K. S. A. 84-9-507 and Annot., 35 A. L. R. 3d 1016 [1971].)

A default having been established, the next question is whether the Kuhn Company has committed a breach of the peace in the process of its repossession.

The appellant contends the appellees took repossession of the secured property by "stealth" and thereby committed a "breach of the peace" under the facts in this case. The appellant asserts that the Kuhn Company used "stealth" to effect the repossession because the repossession occurred without the appellant's knowledge and, arguably, at a time when the Kuhn Company knew the appellant would not be at his place of residence. The deposition testimony of the parties submitted to the court for consideration upon the motion for summary judgment fails to bear out the appellant's contention that appellees knew the appellant would not be home. In fact, the appellant's deposition testimony tends to establish the contrary. To support the appellant's assertion that "stealth" is part of a breach of the peace the appellant argues it should be defined

to cover, without more, a repossession that is effected without the debtor's knowledge. The appellant places primary reliance on *Motor Equipment Co. v. McLaughlin,* supra, a case dealing with fraud and duress which is not present here, but a case which at one point quotes 14 C. J. S., Chattel Mortgages, § 185, which says in part:

"'. . . The mortgagee must not take possession by the use of force, threats, or violence, nor, it has been held, by the use of fraud or *stealth.* . . .'" (p. 270.) (Emphasis added.)

(See 15 Am. Jur. 2d, Chattel Mortgages, § 122 and Annot., 45 A. L. R. 3d 1233, 1246, announcing same rule.)

Here Mr. Benschoter had knowledge that the property might be taken. He had received repeated warnings from the bank and the Kuhn Company, and he *agreed to the taking of repossession upon his continued default after Saturday, September 2, 1972.* Thus the appellees had permission to be on the property, both from the appellant and his seventeen-year-old son at the time of their entry. Had the seventeen-year-old son refused to let the appellees repossess (*Morris v. Bk. & Tr. Co.,* 21 Ohio St. 2d 25, 254 N. E. 2d 683 [1970]), or had he requested the appellees to wait until his father returned, a different case might be presented. (*Luthy v. Philip Werlein Co.,* 163 La. 752, 112 So. 709 [1927].)

Although *Motor Equipment Co. v. McLaughlin,* supra, suggests that fraud or stealth may vitiate an otherwise valid repossession, the facts are wholly inapplicable to the instant case. There the secured creditor not only obtained its chattel mortgage by duress, but it effected repossession:

". . . [O]ver the protest of appellee and by force. Appellee's attorney was pushed aside after he had protested to the removal of the property and had closed the door. The door was reopened and the property was removed by a large crew of appellant's men. . . ." (p. 269.)

The question before the court was not, therefore, whether the repossession was effected by stealth, but rather whether the secured creditor was authorized to take and remove the property from the debtor's place of business by actual force.

As a matter of law this court cannot say "stealth", as the term is used in the context of this case by the appellant, constitutes a "breach of the peace". Tracing the language used in the *Motor Equipment Co.* case to its cited authority, only *Wilson Motor Co. v. Dunn,* 129 Okla. 211, 264 Pac. 194 (1928) and other Oklahoma cases subsequent to *Wilson* seem to support the stealth concept. However, stealth, in the sense of the debtor's lack of knowledge of the

creditor's repossession, does not make an otherwise lawful repossession an unlawful repossession in Oklahoma. (*Kroeger v. Ogsden,* 429 P. 2d 781 [Okla. 1967]; *General Motors Acceptance Corp. v. Vincent,* 183 Okla. 547, 83 P. 2d 539 [1938]; and *First National Bank & Trust Co. v. Winter,* 176 Okla. 400, 55 P. 2d 1029 [1936].)

White and Summers in their Handbook of the Law under the Uniform Commercial Code (West Publishing Co., 1972, pp. 966-975), discuss the essential requirement that repossession be peaceful and what constitutes a breach of the peace, as follows:

". . . To determine if a breach of the peace has occurred, courts inquire mainly into: (*1*) whether there was entry by the creditor upon the debtor's premises; and (*2*) whether the debtor or one acting on his behalf consented to the entry and repossession." (p. 967.)

Using this basis for an analysis the trial court correctly found there was no breach of the peace in this case. (*Northside Motors of Florida, Inc. v. Brinkley,* supra; *Harris Truck & Trailer Sales v. Foote,* 58 Tenn. App. 710, 436 S. W. 2d 460 [1968]; and Annot., 99 A. L. R. 2d 358 [1965].)

The question remains whether the appellee Kuhn Company, the party that physically repossessed the equipment, was subrogated to the rights of the bank and thus able to take advantage of the protection given self-help repossession by 84-9-503, *supra.* After making the August 9, 1972, payment, Kuhn Company, as guarantor of the note and security agreement became subrogated to the rights of the bank as a secured party. The Uniform Commercial Code provides that a guarantor is also a surety. (L. 1975, ch. 514, § 2 [40] [K. S. A. 84-1-201 (40)].) The code also provides:

"A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. . . ." (L. 1975, ch. 514, § 34 [5] [K. S. A. 84-9-504 (5)].)

When a surety performs under his guaranty, he is subrogated to the rights of those to whom he responds. (*United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* 186 Kan. 637, 352 P. 2d 70; and *Mountain Iron & Supply Co. v. Jones,* 201 Kan. 401, 441 P. 2d 795.) In the *Mountain Iron & Supply Co.* case the rule on subrogation was stated as follows:

"Kansas follows the rule that when a guarantor of an obligation is called upon by the creditor to pay the indebtedness, the guarantor or surety is entitled to be subrogated to the rights of the creditor against the principal. . . ." (p. 408.)

The appellant contends the Kuhn Company was not subrogated to the bank's rights under the note and security agreement at the time the appellant's property was repossessed because the Kuhn Company had not paid the full amount of the note to the bank until September 29, 1972. Kansas law is contrary to the appellant's position. In *United States Fidelity & Guaranty Co. v. Maryland Cas. Co.*, supra, the rule is stated:

"The general rule that one may not be subrogated to the rights and securities of a creditor until the claim of that creditor has been paid in full is subject to limitation. The rule against subrogation on part payment is that a creditor cannot equitably be compelled to split his securities, and give up control of any part until he is fully paid. Such rule is for the benefit of creditors, and the creditor alone can object to subrogation under partial payment, and only to the extent that it would impair his preferred rights. But the rule extends only so far as its reason goes and is never invoked to defeat contract obligations in the interest of the debtor alone." (Syl. ¶ 3.)

Here the record discloses no objection was made by the bank concerning the Kuhn Company's right of subrogation upon partial payment. Rather the record indicates that Louis Kuhn was instructed or requested, or would be instructed or requested, to repossess the security because of the appellant's continued default under the note. Therefore, we are compelled to uphold the finding of the trial court that the appellee Kuhn Company was subrogated to the rights of the bank and thus able to take advantage of the "self-help" repossession provisions of K. S. A. 84-9-503.

On the record presented the appellees are entitled to judgment as a matter of law. The judgment of the trial court is affirmed.

MILLER, J., not participating.