736

Johnny TUCKER *v.* Hollis SCARBROUGH and
SCARBROUGH FORD, INC.

CA 79-43                              596 S.W. 2d 4

Court of Appeals of Arkansas
Opinion delivered March 5, 1980
Released for publication March 26, 1980

*Hubert L. Burch,* for appellant.

*Elrod, Elrod, Elrod & Lee,* by: *John R. Elrod,* for appellees.

M. STEELE HAYS, Judge. Appellant filed this action below for conversion of a dump truck which he had purchased from appellees on credit. Appellees assigned the conditional sales contract to the First National Bank at Siloam Springs, and guaranteed payment to the bank in the event of appellant's default. Monthly installments were made irregularly from the purchase in May, 1973 to September 30, 1974, when the truck was repossessed by appellee, Hollis Scarbrough. Appellant contends that the taking of the vehicle was a willful and intentional conversion entitling him to punitive damages, lost profits and the value of the truck. The cause was tried to a jury and a verdict on behalf of the defend-- ant-appellees was returned.

On appeal, appellant assigns three points for reversal: I. The trial court erred in directing a verdict on the issue of punitive damages; II. the evidence was insufficient to support a finding of consent by the appellant to the taking by the appellee; and III. the evidence was sufficient to support a finding that the appellees had assigned the security agreement to the bank and were not a secured party with the right to repossess.

I.

We find nothing in the record creating a submissible issue on punitive damages, even when the appellant's evidence is viewed in the most favorable light possible. It is undisputed that appellant was in default under the contract and the testimony on behalf of appellant with respect to the events of the repossession provides nothing in the way of conduct by the appellee, Hollis Scarbrough, which should be ex-

emplified by an award of punitive damages. We hold that the trial court was correct on this evidence to refuse to submit the issue to the jury. As was said in *Miller* v. *Blanton,* 213 Ark. 246, "before punitive damages may be awarded it must, in the absence of proof of malice or willfulness, be shown that there was on the part of the tortfeasor a wanton disregard of the rights and safety of others." *Texarkana Gas & Electric Co.* v. *Orr,* 59 Ark. 215. Appellant argues that he was in the hospital and unable to protect his interest in the collateral; but that circumstance does not, in and of itself, give a basis for punitive damages, where a debtor is admittedly in default.

## II.

Appellant urges that the evidence to support a finding that appellant consented to the taking by the appellee, Hollis Scarbrough, is insufficient as a matter of law. We agree that whether substantial evidence to support a finding exists is a question of law on appeal (*St. Mary's Hospital* v. *Bynum,* 264 Ark. 691), however, we find the argument to be without merit, as the record contains evidence, both direct and circumstantial, supporting the verdict of the jury with respect to this issue. Hollis Scarbrough testified that he spoke with appellant by telephone with Leister Smith on one extension and that he, Scarbrough, assured appellant that the truck would be held to give appellant the opportunity to refinance — he stated that appellant's uncle advised appellant to let Scarbrough have the truck on that assurance and appellant agreed. The record has other evidences corroborating appellee's account of the event, but his testimony alone provides substantial evidence that the taking by appellees was not wrongful but was, in fact, consented to.

## III.

Finally, appellant argues that "the evidence was sufficient to support a finding that there had been an assignment of the financial statement and security agreement to the bank and therefore that the appellee was not a secured party with the right to repossess upon default within the meaning of Ark. Stat. Ann. § 85-9-503."

Whether the evidence was sufficient to support a finding contrary to the verdict reached does not meet the requirements of the rule on appellate review, which requires that evidence be *insufficient* to support the findings of the jury.

There is reasonable likelihood that the verdict of the jury on the issue of consent obviates consideration of the issue of whether substantial evidence was offered on either side of this point of error; however, no instructions are provided in the abstract and we are unable to determine how the jury was instructed on the submission of this issue.

Rather, we prefer to treat this assignment of error as being that the appellee had no right of repossession as a matter of law for the reason that appellee had not paid off appellant's note.

It is undisputed that appellee had not paid off the bank, or any part of the balance due at the time of taking, although there was testimony that the bank was looking to appellee as guarantor for payment, rather than to the appellant.

Appellant's argument on this point rests upon the theory that before a guarantor is subrogated to the rights of a creditor to repossess the collateral against a debtor in default, the guarantor must pay off the indebtedness in full or in part. Appellant cites *Moon Realty Co.* v. *Arkansas Real Estate Corp.,* 262 Ark. 703; *Norton* v. *National Bank of Commerce,* 240 Ark. 143; *Farmers Acceptance Corp.* v. *DeLozier,* 178 Colo. 291, 496 P. 2d 1016, and attempts to distinguish *Benschoter* v. *First National Bank of Lawrence,* 218 Kan. 144, 542 P.2d 1042.

The *Norton* case, while presenting a credit transaction similar to the one before us, is clearly distinguishable in that there the controversy was between the guarantor, Norton, and the creditor, National Bank of Commerce, the *debtor* having no interest in the litigation. The court held that the guarantor *was* a debtor within the terms of Ark. Stat. Ann. § 85-9-504(3) and, therefore, entitled to notice that the bank was about to sell the repossessed vehicle at a private sale in order to protect himself under the guarantee. That is not the issue here.

Nor does the decision in *Moon, supra,* provide precedent for appellant, although *Moon* does contain dictum that one seeking subrogation must pay the obligation in full; however, that was not before the court as the party seeking subrogation in *Moon* had elected prior to the litigation to pay the obligation in full. It would not, we think, be judicious or logical to rely on *Moon* in deciding the issue here presented. Other dictum in *Moon* recognizes the equitable dimensions of the principle of subrogation to achieve a just end:

> "Further, the doctrine of subrogation is administered not as a legal right, but to do equity in the particular case before the Court. *Federal Land Bank of St. Louis* v. *Richland Farming Co.,* 180 Ark. 442, 21 S.W. 2d 954 (1929)."

The *DeLozier* case, *supra,* is cited simply for the general rule, not here disputed, that an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than did the assignor.

We agree, decidedly, with appellee that there is no logical reason why a *debtor* in default should have standing to raise the argument that the guarantor must pay the indebtedness to the principal creditor before the guarantor can claim the right of subrogation where the creditor is looking to the guarantor rather than to the debtor.

This may not have been squarely decided in this jurisdiction but it has the weight of logic where the facts are as in the record before us and the only dispute is between the debtor and the guarantor. This result is supported by sound reasoning in *Benschoter* v. *First National Bank of Lawrence,* 218 Kan. 144, 542 P. 2d 1042 (1975), and in *Mountain Iron & Supply Co.* v. *Jones,* 201 Kan. 401, 441 P. 2d 795 (1968), although in *Benschoter* a partial payment against the debt had been made by the guarantor. This outcome reposes well with the equitable nature of subrogation to achieve a just and worthwhile end, depending on circumstances of a given case. *Baker* v. *Leigh,* 238 Ark. 918. Thus, we conclude that appellee was a "secured party" within the definition of Ark. Stat. Ann. § 85-9-504(5).

Affirmed.