**INTERFIRST BANK, DALLAS, TEXAS, Appellant,**

v.

**Terry Lee HANSON, Appellee.**

**No. 85–1029.**

Supreme Court of Iowa.

Nov. 12, 1986.

Phillip S. Deats of Whitesell, Deats & Whitesell, Iowa Falls, for appellant.

James R. Sween, Eldora, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

This is an appeal from an award of actual and punitive damages for wrongful conversion of an automobile. The Interfirst Bank, Dallas, Texas, brought a replevin action against Terry Lee Hanson, seeking to recover a 1980 Datsun 280TZ Turbo (vehicle). Hanson counterclaimed for damages caused by the bank's seizure and retention of the vehicle for twenty days during the pendency of the proceedings. The bank admits the seizure but maintains it had a right to a self-help repossession under its lease contract with Hanson. A jury found against the bank on the replevin action and determined that Hanson was entitled to $1191.47 for damages for wrongful seizure and detention of the vehicle, and to $60,000 for punitive damages. On appeal, the bank claims the court erred in giving an instruction applicable to the counterclaim and in submitting the issue of punitive damages. Additionally, the bank claims that if punitive damages are allowed, a remittitur of such damages should be permitted.

In July 1982 Hanson purchased the vehicle through his cousin Larry Knott, who was an employee of Texas Vehicle Management, an automobile sales dealership in Dallas, Texas. Hanson paid a down payment on the vehicle, but was unable to complete financing arrangements prior to his departure from Texas. He made tentative arrangements through Knott, and signed a power of attorney appointing Knott to act for him in financing the purchase.[1]

Financing was obtained in Hanson's absence through Interfirst Bank (bank). The arrangement, however, was a lease contract rather than an installment purchase contract. Hanson claims to have been unaware of the lease, although he did contact the bank to report that the payment amounts called for by his payment booklet seemed much too low, according to preliminary agreements he had signed. The bank instructed him to make the payments as specified, and apparently neither party investigated the matter further at that time.

When Hanson decided in 1983 to refinance the vehicle with an Iowa institution, it became obvious that the arrangements ultimately made were not in accordance with the ones he had anticipated. He requested a payoff amount from the bank, but the amount given was much higher than he thought it should be, and the bank did not provide the documentation he requested supporting the amount. Hanson discontinued his payments, and the bank, after sending a notice to cure, hired a Des Moines company to repossess the vehicle. Later, the bank retained counsel in Iowa Falls to bring a replevin action.

The bank filed a replevin action on August 12, 1984, and a hearing for a prejudgment writ of replevin was set for August 27. In the meantime, the bank's agents continued their efforts to repossess the vehicle; they succeeded on August 21. The hearing was held as scheduled, even though the bank had possession of the vehicle and the issue appears to have been moot. The court denied the prejudgment request, and the bank returned the vehicle to Hanson.

Following the hearing, the bank amended its petition, having learned that Hanson had not himself signed the lease, to allege that the power of attorney authorized the dealer to sign the lease on behalf of Hanson. Hanson denied this allegation and amended his counterclaim to demand actual and punitive damages for the wrongful deprivation of his automobile from August 21 through September 10 and for damage

1. The power of attorney authorized Knott "to execute and in my name sign any and all papers in connection with the sale and transfer" of the vehicle "along with any insurance refunds, payoffs, finance refunds, insurance losses that may be deemed necessary by my said attorney on the above transaction until paid in full." While Knott testified he was authorized by Hanson to enter a lease agreement, Hanson denied such authorization and testified he knew nothing of a lease until he received the suit papers. Without objection from either party, the court instructed the jury to consider the document and determine the intention of the parties in connection with the bank's claim that the lease was signed pursuant to the power of attorney.

to the vehicle while it was in the bank's possession. At trial, the jury found against the bank on its claim for replevin and for Hanson on his deprivation claim, awarding both compensatory and punitive damages.

■ Before discussing the issues presented for review on this appeal, we wish to point out that no objection was made to the filing of the counterclaim. *See* Iowa Code section 643.2 (1985) (In a replevin action "there shall be no joinder of any cause of action not of the same kind, nor shall there be allowed any counterclaim."). We have interpreted this section to allow a counterclaim in a replevin action to recover damages for loss of use of the automobile during the time it was wrongfully detained pursuant to a pretrial writ of replevin issued at plaintiff's request. *See Universal C.I.T. Credit Corp. v. Jones,* 227 N.W.2d 473, 476 (Iowa 1975). There was no detainment under a replevin writ here; rather, the bank claimed the seizure was a self-help repossession under a lease. *See* Iowa Code § 554.9503. We believe that the counterclaim was a conversion action which would have been subject to a pretrial motion. The replevin and the counterclaim were tried together either by the consent of the parties or without objection, however, and we will hear the appeal. *See Ross v. Ross,* 205 Iowa 424, 424, 216 N.W. 22, 22 (1927); *Benjamin v. Petersen Heat, Light & Power Co.,* 170 Iowa 461, 465, 153 N.W. 71, 72 (1915).

I. *Instruction.* The appellant first challenges one of the trial court's jury instructions. The court submitted instructions to the jury on the bank replevin claim by Instructions 12 through 16 and on Hanson's conversion counterclaim by Instructions 17 through 21. On appeal, only Instruction 19 is challenged. Instruction 19 told the jury "that due process of law requires an opportunity for a hearing to be available to a debtor before a deprivation of property can take place." This instruction was apparently intended to explain the marshalling instruction on conversion, which placed the burden of proof on Hanson to establish "[t]hat the bank did not have a right to possession of said motor vehicle from August 21, 1984, to September 10, 1984." [2]

The bank challenges the validity of Instruction 19, claiming it instructed the jury that the bank was not entitled to exercise its right of repossession under the lease. While we believe this overstates the effect of the instruction, we agree that the practical effect of the instruction was to tell the jury the bank was wrong in seizing the vehicle without an opportunity for hearing. The bank preserved error by excepting to the instruction and alerting the court that the bank relied on the self-help provision of the lease. This is consistent with the bank's present claim that under the Uniform Commercial Code, specifically Iowa Code section 554.9503, a creditor is entitled to a self-help repossession of secured collateral as long as it is done without a "breach of the peace." [3] Hanson retorts that, under the circumstances of this case, due process was violated even though section 554.9503 itself is not unconstitutional as a violation of due process. He points to the trial court's posttrial ruling, reviewing its rationale in overruling the objection to Instruction 19, "that once court intervention had been requested by way of replevin, the right to self-help by repossession, without hearing thereon, has been foreclosed."

---

**2.** The instruction also required establishment that the bank had possession of the vehicle and damage to Hanson. While we believe that the elements of proof should have included Hanson's right to possession and the bank's conversion rather than the court's formulation that the bank did not have a right of possession, *see Welke v. City of Davenport,* 309 N.W.2d 450, 452 (Iowa 1981), no objections were raised and the instruction became the law of the case.

**3.** In pertinent part section 554.9503 states:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action....

We put these contentions in perspective when we examine the issues facing the jury by virtue of the instructions and the evidence. In the conversion action, the burden was on Hanson to disprove the bank's right to possession. Hanson presented evidence that the lease was executed without his authority; however, this evidence was hotly contested. If Hanson failed to establish lack of authorization and the lease was valid for the purposes of the counterclaim, the next issue for the jury was the legality of the repossession by the bank. The instruction, which in effect requires an opportunity for a hearing before a repossession could occur, lays this last issue to rest in view of the undisputed evidence that no hearing was provided. Under section 554.9503, however, no hearing is required prior to repossession. If the bank is correct that under the lease and section 554.9503 it was entitled to a self-help repossession, the instruction was fatally defective.

■ We believe that fourteenth amendment due process requirements for repossession of chattels are well settled. Section 554.9503 provides that when a debtor defaults, a secured party has the right to take possession without judicial process if the repossession can be carried out without a breach of the peace, commonly known as self-help repossession, or to proceed by action, generally a replevin action. As to statutory replevin, the United States Supreme Court in the landmark case of *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh'g denied*, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972), struck down state statutes that allowed prejudgment replevin without notice and a right to contest prior to the seizure of the chattels, holding that such statutes worked a deprivation of property without procedural due process. We also determined that our previous replevin statutes were defective because of due process infirmities. *Thorpe Credit, Inc. v. Barr*, 200 N.W.2d 535, 537 (Iowa 1972). Our present prejudgment replevin section meets the requirements of due process. Iowa Code § 643.5 (1985). As to self-help repossessions, although neither the Supreme Court nor this court has passed on the issue, other jurisdictions have uniformly held that contractual self-help repossessions are private actions which do not constitute state action unless the state significantly involves itself. Thus self-help repossession does not require the application of federal constitutional standards. *See, e.g., Shirley v. State National Bank*, 493 F.2d 739 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974); *Gibbs v. Titelman*, 502 F.2d 1107 (3rd Cir.), *cert. denied sub nom. Gibbs v. Garver*, 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Brantley v. Union Bank & Trust Co.*, 498 F.2d 365 (5th Cir.), *cert. denied*, 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309 (1974); *Gary v. Darnell*, 505 F.2d 741 (6th Cir.1974); *Nowlin v. Professional Auto Sales, Inc.*, 496 F.2d 16 (8th Cir.), *cert. denied*, 419 U.S. 1006, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *Adams v. Southern California First National Bank*, 492 F.2d 324 (9th Cir.1973), *cert. denied*, 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974); *John Deere Co. v. Catalano*, 186 Colo. 101, 525 P.2d 1153 (1974); *Benschoter v. First National Bank*, 218 Kan. 144, 542 P.2d 1042 (1975); *Penney v. First National Bank*, 385 Mass. 715, 433 N.E.2d 901 (1982); *King v. South Jersey National Bank*, 66 N.J. 161, 330 A.2d 1 (1974). We conclude that resort to statutory replevin action invokes procedural due process, while a self-help repossession generally does not require notice to the debtor with opportunity for hearing.

The trial court determined, however, that once the bank sought the intervention of the court in the replevin action, the right to self-help repossession without hearing was foreclosed. The trial court reasoned that otherwise the intent of *Fuentes* is nullified. It explained that a replevin action could be initiated utilizing the court process until the property could be located or possession obtained and then the action could be dismissed. It concluded that due process "does not permit this kind of abrogation of the statutes."

■ While we are concerned with any misuse of our overcrowded dockets, we fail to see any violation of due process in this instance. Due process speaks to procedural protections afforded when government action is involved. Although the aid of the court had been separately sought, the repossession itself was not performed under the color of any judicial order or sanction; the vehicle was taken off of a public street without protest. The lease allowed the bank in the event of default to "take the car peacefully wherever it is located," which is consistent with the remedy provided by section 554.9503. Self-help repossessions and replevin actions are alternate methods of regaining the possession of collateral as permitted by section 554.9503. The remedy of reclaiming possession of the collateral is only one of the several remedies available to the creditor upon the debtor's default in sections 554.9501–.9505, and section 554.9501 provides that such remedies "are cumulative." We find no language in either section 554.9503 or in chapter 643 which indicates that once replevin is sought, private contractual rights are prohibited or elevated into state action invoking the fourteenth amendment. The selection of replevin does not preclude private self-help repossession of the collateral during the pendency of the replevin action. *McIlroy Bank & Trust v. Seven Day Builders of Arkansas, Inc.*, 1 Ark.App. 121, 613 S.W.2d 837, 842 (1981). While we do not suggest that our courts be utilized as an additional tool of repossession when the creditor is simultaneously seeking private means of repossession pursuant to contract, we believe the creditor has this option.

Additionally, we are unaware of other reasons to foreclose a self-help repossession, without notice and opportunity for hearing, during the pendency of this replevin action. Hanson concedes that a claim of election of remedies is unavailable and does not plead any theory of estoppel or waiver. While the court has a duty to control its docket, in the absence of a loss of dignity to the court, fraud or other chicanery practiced on the court, we believe

the court lacks inherent power to assume control over activities outside the realm of the court action.

■ Hanson urges finally that error was harmless because the jury determined that there was no valid lease. The jury did find against the bank on the replevin issue. The replevin action marshalling instruction placed on the bank the burden of proof to show "that the bank had a valid lease agreement with Hanson." Under this record the jury could have determined that the bank did not meet its burden of proof on this issue and that Hanson failed to meet his burden of proof on the required elements in the counterclaim. Consequently, the verdict for Hanson in the replevin action does not preclude the jury from finding for the bank in the conversion action. The error in the instruction was prejudicial.

II. *Disposition.* In summary, the giving of Instruction 19 was error and requires a reversal of the judgment entered on the counterclaim. This error did not affect the judgment against the bank on the replevin action. The issue in the replevin action was the right to possession of the vehicle on the date the action was commenced, August 13, 1984. The faulty instruction was directed at the repossession of the property by the bank on August 21 without providing Hanson the opportunity for a hearing. We do not believe that this error misled the jury in its consideration of the replevin action.

The bank also claimed there was error in the submission of the issue of punitive damages to the jury. Our review of the record indicates that the court did not err in submitting the issue. On retrial, however, the trial court will be bound by the facts as presented anew. As the award of punitive damages was a part of the conversion counterclaim, this award is also reversed and remanded for a new trial.

We have considered all of the arguments of the parties, although we may not have addressed each one specifically. We affirm the judgment of the trial court on the replevin action. We reverse the judgment

entered on the counterclaim and remand for a new trial on the counterclaim. Costs are assessed against the appellee.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.