## FIREBAUGH v. GUNTHER, Ex'r.

No. 15234—Opinion Filed Feb. 10, 1925.

1. **Chattel Mortgages—Mode of Taking Possession of Property by Mortgagee.**

The only restrictions upon the mode by which the mortgagee secures possession of the mortgaged property, after breach of condition, are that he must act in an orderly manner and without creating a breach of the peace, and must not intimidate by securing the aid of the officer, who pretends to act colore officii.

2. **Damages — Basis for Exemplary Damages.**

To entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent or must be the result of such gross negligence —such disregard to another's right—as is deemed equivalent to such intent.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from County Court, Caddo County; R. L. Lawrence, Judge.

Action by Sandy Gunther, executor of the estate of Green Gunther, deceased, against F. Firebaugh. From judgment in favor of plaintiff, defendant brings error. Affirmed.

A. J. Morris, for plaintiff in error.

Morgan & Osmond, for defendant in error.

Opinion by PINKHAM, C. This action was commenced in the county court of Cad-

do county by the defendant in error, as executor of the estate of Green Gunther, deceased, against the plaintiff in error, as defendant, to recover the value of certain property claimed to have been converted by the plaintiff in error, defendant in the trial court.

The parties will be referred to as they appeared in the lower court.

Plaintiff alleged in his petition that the property involved was of the value of $320, and further alleged that by reason of the wrongful and unlawful acts of the defendant plaintiff was entitled to exemplary damages in the sum of $500.

For answer the defendant denied generally all of the allegations of plaintiff's petition.

The case was tried before a jury and resulted in a verdict for the plaintiff for $250 actual, and $200 exemplary damages without interest. Judgment was rendered for the plaintiff upon the verdict. From said judgment the defendant appeals.

The assignments of error set out and discussed in defendant's brief are that the court erred in refusing defendant's requested instructions No. 1 and No. 2, and in giving instruction No. 4, which said instruction submitted to the jury the question of exemplary damages.

Defendant's requested instruction No. 1 told the jury, in effect, that the defendant had the right to take possession of the property in question provided he could do so without committing a breach of the peace, and that the mere fact that Mrs. Gunther may have protested against the agent of the defendant taking possession of the property would not make the taking wrongful.

Instruction No. 2 requested by the defendant told the jury, in effect, that the mere fact that the agent of the defendant, who took the property, was a deputy sheriff, would not make the taking wrongful, unless he claimed or pretended to act as an officer.

The facts adduced on the trial are substantially as follows:

On April 1, 1918, one Green Gunther executed to the defendant a note for $77, due October 1, 1918, and to secure the payment thereof executed and delivered a chattel mortgage on a lister-planter and two certain mules. The note was not paid at maturity. In the meantime Green Gunther died and his son, Sandy Gunther, plaintiff herein, was appointed executor of his father's last will.

The executor of the estate took charge of the property involved and placed it in the care and custody of his mother, the widow of the deceased, who continued to reside on the home place, where the property in question was located.

There is no dispute as to the fact that the defendant secured the services of a deputy sheriff, who went to the Gunther home and took the property in question without the consent of the executor or of Mrs. Gunther, who had charge of the same, and in disregard of her protest.

It appears that the personal property in question was appraised and the executor advised to keep it intact until further orders of the court.

The record discloses that the officer stated to Mrs. Gunther that he had a certified copy of a mortgage that the defendant was holding. It further appears, however, that the mortgage was not exhibited by the officer to Mrs. Gunther or to the executor. The officer stated that he was there to take the property. Mrs. Gunther testified that she said to the officer:

" 'Everything has been appraised and it's in the hands of the court and everything will be settled by the court.' He said, 'I want to take them.' I said, 'I forbid you to take them.' He said, 'I am going to take them. I don't want to make you any trouble.' When he said that I got scared. I didn't know what he was going to do."

The record discloses that the deputy sheriff then took possession of the lister and the mules, which were later sold by the defendant.

It further appears that a few days after the property was taken the attorney for the estate advised the agent of the defendant, who had the matter in charge, that the taking was wrongful, but that he would pay the amount of the note and interest thereon, and thereupon tendered the full amount of the debt and interest. The agent of the defendant refused to accept the same for the reason, as testified to by him, that he did not know whether he had the right to take the money offered him.

The property was sold, as stated, the mortgagee retaining some $11 excess over the debt and all expenses.

Counsel for defendant says in his brief:

"The mere fact that the agent of the mortgagee who takes possession is an officer does not make the taking wrongful when he does not claim or pretend to act as an officer, provided he uses no threats or force or creates no breach of the peace."

The undisputed facts show that the defendant's agent who seized the property had no process of any kind; that he was well known by all the parties concerned as a deputy sheriff, and that he had acted as such officer for many years.

We think it is clear from the facts and circumstances in evidence that the effect of his presence on the premises occupied by the widow of the deceased and his demand that the mortgaged property be turned over to him, coupled with his statement to Mrs. Gunther, after her protest and command to desist from removing the property, to the effect that he was going to take it and did not want to make any trouble constituted intimidation amounting to force and that the taking of the property under the circumstances of this case constituted a conversion.

In 11 C. J. 560, it is said:

"According to some authorities the mortgagee must not intimidate by securing the aid of an officer who pretends to act colore officii," citing among other cases, Ray v. Navarre, 47 Okla. 438, 147 Pac. 1019.

In the case of Waggoner v. Koons, 67 Okla. 25, 168 Pac. 217, cited by defendant, the rule is announced that:

"The only restriction upon the mode by which the mortgagee secures possession of mortgaged property after breach of condition, is that he must act in an orderly manner and without creating a breach of the peace, and must not intimidate by securing the aid of an officer who pretends to act colore officii."

The trial court instructed the jury to the effect that under the proof offered in the case and not denied by the defendant the taking of said property by the defendant and his agent was not a peaceable taking of the property; that the taking of the property by the defendant through his agent, the deputy sheriff, as shown by the undisputed proof in the case, over the objections of plaintiff's agent, Mrs. Green Gunther, and without the consent or knowledge of the plaintiff or anyone acting for him, was intimidation amounting to force within the meaning of the law, and instructed the jury on the question of conversion of property to find for the plaintiff.

The court further instructed the jury "that after you have determined the total amount of damages, if any you award to the plaintiff, you may then take from that amount the sum of $77, together with interest at 10 per cent. from the 1st day of April, 1918, until the 16th day of January, 1919, and render your verdict for the balance, if

any you may find the plaintiff entitled to recover from the defendant."

We think these instructions contained a fair and correct statement of the law applicable to the facts and circumstances of the case, and that the requested instructions offered by the defendant were properly refused.

It is finally contended that the court erred in submitting to the jury the question of exemplary damages, and cases decided by this court are cited in the brief of defendant in support of his contention: Western Union Tel. Co. v. Reeves. 34 Okla. 468, 126 Pac. 216; Ft. Smith & Western Ry. Co. v. Ford, 34 Okla. 575, 126 Pac. 745; Haskell Nat. Bank v. Stewart, 76 Okla. 58, 184 Pac. 463.

The rule announced in the cases cited is that to entitle the plaintiff to a recovery of exemplary damages in an action sounding in tort the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent or must be the result of such gross negligence—such disregard of another's rights —as is deemed equivalent to such intent.

The verdict, as before stated, was for $250 actual, and $200 exemplary, damages.

"In any action for the breach of an obligation not arising from contract where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant." Section 5975, Comp. Stat. 1921.

The instruction submitting the question of exemplary damages was to the effect that if the jury believed from the evidence that the defendant, in converting the property of the plaintiff, acted in bad faith or under the circumstances of aggravation and without regard to the rights of the plaintiff they were authorized, in addition to actual damages, if any they should find, to award the plaintiff as exemplary damages such an amount as in their judgment from all the facts and circumstances in the case would be sufficient punishment to the defendant, not to exceed the amount asked for in the petition.

We think the testimony tended to show the case to be one of an aggravated nature. The estate was in the due course of settlement and the evidence shows the ample sufficiency of the security. The defendant procured the aid of an officer to take from an old colored woman, the widow of the deceased, the mortgaged mules and lister,

which had been left in her custody by the executor of the estate. The officer was armed with no process, and it is clear in stating to her that he came to take the property and did not want to make any trouble, such language was intended to have, the effect which we think it did have; to impress upon her mind the fact that as an officer he had the authority to take the property. The taking being wrongful and in total disregard of plaintiff's rights in the light of the facts established on the trial, we think the instruction complained of was proper and the verdict of the jury warranted.

Upon the whole case we are of the opinion the judgment should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 11 C. J. p. 560; (2) 17 C. J. p. 979.