CLELL SEE, Appellant, v. AUTOMOBILE DISCOUNT CORPORATION, a Corporation, and SPENCER MATHIS.—50 S. W. (2d) 993.

Division One, June 13, 1932.

*Waldo Edwards* for appellant.

*C. G. Buster* and *Jeffries, Simpson & Plummer* for respondent.

FERGUSON, C.—The plaintiff, See, brought this action for damages charging that defendants forcibly and unlawfully "took away from" him a certain automobile described in the petition. At the close of plaintiff's evidence the court sustained defendants' motions for directed verdicts whereupon plaintiff took an involuntary nonsuit with leave to move to set same aside. Plaintiff's motion to set aside the involuntary nonsuit was overruled and he appealed. The appeal was granted to the Kansas City Court of Appeals but that court, at its October term, 1929, transferred the cause to this court on the ground that the amount in dispute exceeds the jurisdiction of the Court of Appeals.

The petition alleges, "that the defendants (Automobile Discount Corporation and Spencer Mathis) through their agents and servants, forcibly, unlawfully, willfully and without any right or authority took away from the plaintiff one five passenger Ford automobile and kept the same in their possession and refused upon demand of the plaintiff to redeliver the same to him until plaintiff threatened to bring legal proceedings to recover said automobile; that the defendants kept said automobile in their possession unlawfully and wrongfully for five days and that during that time plaintiff was deprived of the use of his automobile." Other matter by which, we assume, it is intended to plead special damages is alleged and plaintiff claims damages, compensatory and punitive, separately stated, aggregating $20,000. The separate answer of defendant Mathis was a general denial. Defendant, Automobile Discount Corporation by separate answer, first "denies each and every allegation" of the petition and then alleges that at the time mentioned in the petition it was the owner and holder of plaintiff's installment promissory note and a chattel mortgage securing same executed by plaintiff upon the automobile mentioned in the petition; that the chattel mortgage constituted a valid lien upon said automobile and that said mortgage provides: "That if default be made in the payment of any of the installments of said note, or if the mortgagee shall feel insecure or fear removal, all of said installments shall at the option of the mortgagee without notice become at once due and payable and the mortgagee shall thereupon have the right to take possession of the said property and . . . sell said property at public auction or private sale with or without notice." The answer then states, that "at and prior to October 12, 1926, information was received by this defendant which caused it to deem itself insecure under said chattel mortgage and caused it to fear a removal of said property from the county of Macon and by virtue thereof this defendant would

have been entitled to take possession of said car under said chattel mortgage.'' Plaintiffs' reply "denies each and every allegation" of the answer.

We undertake a summary of the facts developed by the evidence which the court, upon defendants' demurrers, held insufficient to sustain the allegations of the petition. Defendant Mathis was an automobile dealer at Callao, Missouri. In July, 1926, plaintiff, See, purchased the Ford automobile mentioned in the pleadings from Mathis making a cash payment thereon and executing an installment promissory note for the balance of the purchase price, payable in three monthly installments. See also executed the chattel mortgage referred to in the answer of the defendant Discount Corporation to secure the payment of the note. The mortgage contained the terms and conditions quoted therefrom in said answer. Mathis sold and endorsed the note to defendant Automobile Discount Corporation whose office and place of business was in the city of St. Louis, Missouri. See did not own any real estate. He was engaged in farming rented land. In October, 1926, he posted advertisements announcing, "As I am going to Colorado I will sell at Public Auction" at a designated place, "on Monday, October 11," certain listed personal property. The automobile was not listed for sale. Mathis observing the notices of sale and the announcement therein that See was "going to Colorado" notified the Discount Corporation thereof by letter dated October 7th. The following day the Discount Corporation sent this telegram to Mathis, "Mortgage prohibits removing car from State. Take car or collect full amount if attempt made to move. Writing." By letter of that date (October 8) the Discount Corporation advised Mathis that the next installment on the note would be due on October 17th and he was directed to take possession of the car if it was not paid at that time and declare all installments due and referring to the terms of the mortgage he was directed to take possession of the car upon an attempt by See to remove the car contrary to the provisions of the mortgage. A repossession order was enclosed. This repossession order was dated at St. Louis, Missouri, October 8, 1926, signed by the Automobile Discount Corporation by its President and reads: "You are hereby authorized and directed to repossess Ford Touring, now in the possession Clell See, of Callao, Missouri, under the terms of a chattel mortgage held by us which secures an indebtedness (then described) if attempt to dispose of the car or remove it from State is made. Under the terms of said chattel mortgage we now declare all installments of said note due and payable and hereby direct you to repossess said car without violence and, by due process of law, sell it for our account." This order was not directed to anyone. On the 10th of October, Mathis went to See's home and demanded possession of the car which was refused. No

installment of the note was then due. See testifies: "Mr. Mathis said, 'Clell what are you going to do about that car. You are selling out and going away and you owe two payments.' I said, 'Yes I know that. It isn't due for seven days. Have I failed to make a payment?' He said, 'No.' He said, 'I will take the car up town and put it away.' I said, 'No, I will keep my own.' He said, 'Well we will have to take it away from you.' I told Mathis, 'if he could take it by law he could take it and it couldn't go any other way.'" On the 12th of October Mathis called upon the sheriff of the county and requested him to take the car from See. The sheriff testifies as to what then occurred as follows: "He (Mathis) came to my office and said that Clell See had an automobile and that he bought it on payments and that he had a sale; was going to leave the county and that he wanted that car and that he had gone down there and See refused to give it up and he wanted me to go down and take the car. I asked him about the papers—if he had papers and he told me he had and showed me the papers. (Identified as the repossession order sent by the Discount Corporation to Mathis) I read over the paper and told him there was a question in my mind whether I could take the car on that paper, and he said 'well that's the way they do it.' I said, 'well he has made all his payments and another payment isn't due yet and there is a question in my mind whether I can take the car on that paper.' So I told him to see the prosecuting attorney. He came back and said the prosecuting attorney said that was all we needed and I told Jack (Jack Williams, a deputy sheriff) to go over with Mr. Mathis and get the car. I did not have any writ or process of any kind issued by any court." Mathis accompanied by Jack Williams, the deputy sheriff to whom Mathis delivered the repossession order, went to See's home. Mathis did not go upon the premises but "stayed out in the road." The deputy sheriff went to the house and See testifies, that the deputy sheriff stated he was there to take the car and said, "Clell I hate to do this but under the circumstances I have got to do it." "I said, 'Jack you are the law if you have got the papers to do it alright but otherwise you can't do it;'" that Williams then exhibited the repossession order and "asked me if it was necessary to read the papers. I said, 'Jack, you as the law needn't. If you got the papers you can take it—there sets the car.'" The deputy sheriff took possession of the car and delivered it to the sheriff who retained it in his possession until five days later when upon demand of See's attorney the sheriff released the car to See. The nature and extent of the damages, if any, recoverable is not a question on this appeal and the evidence appertaining thereto is not set out.

The issue made by the pleadings is whether the defendants "through their agents and servants, forcibly, unlawfully, and without any right

910

or authority" to do so took the automobile from the possession of plaintiff, as alleged in the petition, which defendants deny. The answers do not admit or plead that defendants, or either of them, took the automobile from plaintiff by any means or in any manner, lawfully, rightfully or peaceably. In that connection the answer of the Discount Corporation asserts merely that "by virtue" of the chattel mortgage it "would have been entitled to take possession of said car." Defendants (respondents here) say there was "a total failure of proof and the demurrer for that reason was properly sustained" and to support this conclusion they assert: (1) "The evidence showed clearly that no force was either used or threatened," and (2) "The evidence showed that the defendant (Automobile Discount Corporation) had an absolute right to take the property." If it be conceded that the evidence shows that defendant Discount Corporation under the insecurity clause of the mortgage "would have been entitled to take possession of said car," as the defendant pleads, that would not justify or excuse the defendant in taking the automobile from plaintiff over his protest, by force, intimidation or other unlawful method or means. Defendants do not attempt to controvert this proposition but dismiss it with the assertion that the evidence shows "no force was either used or threatened" in taking the car from plaintiff.

■■ It appears from the evidence that when Mathis demanded possession of the automobile, claiming the right to take it under the terms of the mortgage, plaintiff, denying such right had accrued, refused to surrender the possession to Mathis and when Mathis declared "we will have to take it away from you" plaintiff replied that they would have to "take it by law" and "it couldn't go any other way." Mathis thereupon enlisted the aid of the sheriff whose testimony is to the effect that he directed a deputy sheriff to take the car from plaintiff under the erroneous impression that the repossession order, which Mathis delivered to the sheriff and with which the deputy sheriff was armed, invested him with legal authority as sheriff, to seize the car. Certainly this order was not legal process and did not authorize or empower the sheriff, acting as an officer to seize and take the car from plaintiff's possession in the manner shown by the evidence. When See refused, upon demand of Mathis, to surrender possession of the car and stated that Mathis would have "to take it by law" Mathis without resorting to the remedy and process afforded by the courts invoked the services of the sheriff's office and the acts of the deputy who accompanied Mathis to plaintiff's home in seizing the car and taking it from plaintiff's possession were done *colore officii*. See well knew that Williams was a deputy sheriff and Williams claimed to be acting as such under legal process and authority and See, without active resistance, yielded to what he sup-

posed to be the mandate of the law. It is laudable in a citizen to yield to what he supposes to be the lawful authority of an officer purporting to enforce legal process and he can lose no advantage thereby. Defendants having taken the car over plaintiff's protest through the sheriff acting *colore officii* cannot be heard to say that because plaintiff yielded to the demand of the sheriff and offered no resistance requiring the use of actual, physical force by the sheriff to take the car that therefore no force was used in taking the car from plaintiff. It is true no physical force was used but the taking of the property in the manner shown by the evidence was a taking by coercion and intimidation amounting to force within the meaning of the law and constituted constructive force and a civil trespass. ''To obtain possession under such a show and pretense of authority is to trifle with the obedience of citizens to the law and its officers.'' [Jones on Chattel Mortgages, sec. 705; 11 C. J. 560; Bordeaux v. Hartman Co., 115 Mo. App. 556; Firebaugh v. Gunther, 106 Okla. 131, 233 Pac. 460; Thornton v. Cochram, 51 Ala. 415; McClure v. Hill, 36 Ark. 268; Annotation, 57 A. L. R. p. 26.]

We think the record discloses substantial evidence to support the allegations of the petition that the defendants ''through their agents and servants forcibly, unlawfully and without right or authority'' took the automobile from plaintiff and that the trial court erred in sustaining defendants' motions for directed verdicts and in overruling plaintiff's motion to set aside the involuntary nonsuit.

The judgment of the circuit court is reversed and the cause remanded. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Ferguson, C., is adopted as the opinion of the court. All of the judges concur.