Robert E. HELFINSTINE, Appellant,

v.

Shelby MARTIN and Ford Motor Credit
Company, a corporation, Appellees.

No. 47719.

Supreme Court of Oklahoma.

March 15, 1977.

Max Cook and Ronald A. Callicott, Cook & Callicott, Lawton, for appellant.

Ralph W. Newcombe, Newcombe & Redman, Inc., Lawton, for appellees.

Michael Paul Kirschner, Hastie, Kirschner & Brown, Oklahoma City, for First National Bank and Trust Co. of Oklahoma City, amicus curiae.

James A. Bagley, Bagley & Moorman, Oklahoma City, for Fidelity Bank, N.A., of Oklahoma City, amicus curiae.

Robert L. Wheeler, Oklahoma City, for Oklahoma Bankers Association, amicus curiae.

BARNES, Justice:

Appellees filed Petition for Certiorari from a decision rendered April 20, 1976, by the Court of Appeals, Division No. 2, wherein it was held that the Appellees' act of repossessing certain collateral from Appellant was in violation of Article II, Section 7, of the Oklahoma Constitution in that such conduct constituted a deprivation of Appellant's property without first affording him due process of law, i.e., affording Appellant notice and an opportunity to be heard. The Court of Appeals specifically overruled the holding of the Trial Court, which upheld Appellees' act of repossessing its collateral, and, in effect, rendered unconstitutional both the statutory self-help repossession of 12A O.S.1971, § 9–503, and the self-help repossession terms of the parties' security agreement.

These issues raised in Appellant's original brief were:

"1. That the court erred in sustaining Defendants' Motion for judgment, notwithstanding the jury verdict for the reason that the court had no jurisdiction to render a judgment.

"2. That the court erred in sustaining Defendant's Motion for judgment, notwithstanding the verdict, for the reason that there was adequate evidence presented on the part of the Plaintiff to support the verdict of the jury.

"3. That the court erred in refusing to give Plaintiff's requested instruction to the fact that, 'A trespass may be considered a breach of the peace.' "

The facts are not in dispute. Appellant, Robert E. Helfinstine, a painter by trade, entered into a retail installment contract and security agreement with Appellee Ford Motor Credit Company's assignor for the purchase of one 1970 El Camino Chevrolet pickup truck, pledging said vehicle as security for his obligation on the contract. Para-

graph 19 [1] of the agreement provided that in the event the buyer defaults or fails to comply with any other provision of the contract the seller shall have the right to declare "all amounts due or to become due" and "shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, including the right to repossess the Property wherever the same may be found with free right to entry, and to recondition and sell the same at public or private sale."

Monthly payments on the mortgaged vehicle, though usually late, were made through August, 1973. Thereafter, in October, 1973, Appellant defaulted upon the installment obligation which was secured by the above-mentioned personal property. Appellee, Ford Motor Credit Company, was the creditor holding possession of the installment obligation and corresponding security agreement. Upon default, Appellee's agent, Shelby Martin, was dispatched to collect. He found Appellant incarcerated following a domestic complaint. After demand for and refusal of payment and after refusal of delivery of possession of the collateral by the debtor, the creditor, through its agent, Martin, repossessed the collateral from Appellant's driveway by means of self-help and drove the vehicle to Kirk's Wrecker Service and Salvage.

Upon his release from jail several days later, Appellant went directly to the credit company office to make arrangements to make up any payments. At that time he learned that his truck had been repossessed. Appellees refused to return the vehicle. Appellant's wife then joined him at the credit office and offered to make up to three payments for possession of the truck, but the woman in charge, on instructions from Florida, refused, and demanded the entire balance.

Appellant then instituted suit as against Appellees for conversion of the vehicle and sought (after amendment at trial) redelivery of his truck and cancellation of the mortgage which Appellees had against the property, or payment of its value and $50,-000.00 punitive damages. Appellees' answer admitted taking the truck, but pleaded the right to do so arising from the retail installment contract Appellant signed and the Uniform Commercial Code, 12A O.S. 1971, § 9–503.

The Trial Court rendered judgment for the Appellees notwithstanding the verdict of the jury in favor of Appellant for $594.00 actual and $20,000.00 punitive damages. On appeal, the Court of Appeals reversed, finding a wrongful conversion, that the self-help repossession terms of 12A O.S. 1971, § 9–503, and of the security agreement were unconstitutional, and that the evidence was sufficient to sustain the verdict for the actual damages awarded.

1.  The entire text of Paragraph 19 reads:
    "19. DEFAULT. Time is of the essence of this contract. In the event Buyer defaults in any payment, or fails to obtain or maintain the insurance required hereunder, or fails to comply with any other provision hereof, or a proceeding in bankruptcy, receivership or insolvency shall be instituted by or against Buyer or his property, or Seller deems the Property in danger of misuse or confiscation, or Seller otherwise reasonably deems the indebtedness or the Property insecure, Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code, *including the right to repossess the Property wherever the same may be found with free right to entry*, and to recondition and sell the same at public or private sale. Upon request, Buyer shall deliver the Property to Seller at a place designated by Seller. Seller shall have the right to retain all payments made prior to repossession and Buyer shall remain liable for any deficiency. *Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession.* Buyer agrees to pay reasonable attorneys' fees (15 per cent if permitted by law) and other expenses incurred by Seller in effecting collection, repossession or resale hereunder. Seller's remedies hereunder are in addition to any given by law and may be enforced successively or concurrently. Waiver by Seller of any default shall not be deemed a waiver of any other default." (Emphasis ours)

On Petition for Certiorari Appellees contend (1) the Court of Appeals erroneously held 12A O.S.1971, § 9–503, to be unconstitutional.

The validity of self-help repossession as authorized in § 9–503 of the Uniform Commercial Code has been extensively litigated. That section which was adopted in Oklahoma in 1961 is set forth in 12A O.S.1971, § 9–503, and provides:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9–504. Laws 1961, p. 179, § 9–503."

The Oklahoma Code Comment following this section states Oklahoma has previously allowed the secured party to take possession without judicial process so long as it was done without breach of the peace. *Firebaugh v. Gunther*, 106 Okl. 131, 233 p. 460 (1925). Furthermore, the right to peaceful self-help repossession of property under circumstances such as are here involved, far from being a right created by § 9–503 or case law, has roots deep in the common law. [*2 F. Pollock and F. Maitland, The History of English Law, 573 (2d Ed. 1899), and 2 Blackstone, Commentaries on the Law of England, 857–858 (4th Ed. T. Colley, 1899)*].

■ While the Supreme Court of the United States has not considered the constitutionality of § 9–503 of the Uniform Commercial Code, Appellant contends the statute does not on its face meet the requirements of notice and fair hearing established by the Supreme Court in *Fuentes v. Shevin*, 407 U.S. 67, 69, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and *North Georgia Finishing,*

*Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

The United States Supreme Court, in *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), held:

"Since the decision of this Court in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883) the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. *That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.*" (Emphasis ours)

The question now before this Court was presented to the Supreme Court of Florida in *Northside Motors of Florida, Inc. v. Brinkley*, 282 So.2d 617 (Fla.1973). In that case the Trial Court had determined the self-help provision of § 9–503 to be unconstitutional, basing its decision on the authority of *Fuentes v. Shevin, supra*. The Florida Supreme Court reversed, holding the self-help provision of § 9–503 did not violate the due process clause of the Fourteenth Amendment because the due process clause was inapplicable to a factual situation presenting an individual invasion of individual rights, noting at page 620:

" * * * The Supreme Court of the United States has since emphasized and re-emphasized that state action will not be found in the purely private conduct of an individual voluntarily engaged in without some form of active assistance or cooperation on the part of the state. * * * (cases cited)."

The Florida Court adopted the language of *Greene v. The First National Bank of Virginia*, 348 F.Supp. 672 (W.D.Va.1972), which determined § 9–503 did not involve State action and was not violative of the Fourteenth Amendment, and went on to hold:

"We hold that self-help repossession by a creditor does not constitute state action. Florida Statutes, Section 679.503, F.S.A., is no more than a codification or restatement of a common law right and a contract right recognized long before the

promulgation thereof and creates no new rights. 2 Pollock & Maitland, The History of English Common Law (2nd ed. 1968), 574, 2 Blackstone, Commentaries on the Laws of England, 856–858, *Messenger v. Sandy Motors, Inc.*, 121 N.J.Super. 1, 295 A.2d 402 (1972), *Kipp v. Cozens*, 11 U.C.C. Reporting Service 1067. Conditional sales or retain title contracts with self-help repossession provisions as the one entered into by the parties presently before us existed in this state long before statutes were enacted to regulate them. * * * (cases cited)."

The constitutionality of self-help repossession as authorized by § 9–503 has been the subject of numerous judicial challenges within the past decade. The United States Supreme Court has declined to grant certiorari to review four different appeals in which the constitutionality of self-help repossession has been upheld. *Gibbs v. Titelman,* 502 F.2d 1107 (3rd Cir. 1974), cert. denied, 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Brantley v. Union Bank and Trust Co. (consolidated with Baker v. Keeble),* 498 F.2d 365 (5th Cir. 1974), cert. denied, 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309 (1974); *Nowlin v. Professional Auto Sales, Inc. (consolidated with Mayhugh v. Bill Allen Chevrolet),* 496 F.2d 16 (8th Cir. 1974), cert. denied, 419 U.S. 1006, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); and *Adams v. Southern California First National Bank,* 494 F.2d 324 (9th Cir. 1974), cert. denied, 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974).

At least thirty Appellate Courts that have had the opportunity to consider the issue have upheld the constitutionality of self-help repossession. Some of them are: *Gary v. Darnell,* 505 F.2d 741 (6th Cir. 1974); *Turner v. Impala Motors,* 503 F.2d 607 (6th Cir. 1974); *Bichel Optical Lab., Inc. v. Marquette National Bank of Minneapolis,* 487 F.2d 906 (8th Cir. 1973); and *John Deere Co. of Kansas City v. Catalano,* 525 P.2d 1153 (Colo.1974).

The lack of State action has been found primarily as a result of (1) the common law origin of the right of self-help repossession, and (2) the lack of any entwinement on the part of the State with the physical act of repossession. As recognized in the *Brinkley* case, *supra*, at page 622:

" * * * The Superior Court of New Jersey determined in *Messenger v. Sandy Motors, Inc.,* supra, that codification of self-help repossession by enactment of U.C.C. Section 9–503 cannot give that practice the color of state action so as to take it out of the private area and to make it subject to the Fourteenth Amendment. Therein, the court quoted with approval the following statement by Professor Mentshikoff on behalf of the permanent editorial board for the Uniform Commercial Code:

" 'Section 9–503 simply recognizes this common knowledge of buyers on time that repossession follows default and makes unnecessary its statement in the contract. It cannot be that codifying a generally understood practice of ancient and honorable lineage and surrounding it with safeguards renders the practice unconstitutional.' "

Similarly, the Kansas Supreme Court held in *Benschoter v. First National Bank of Lawrence,* 218 Kan. 144, 542 P.2d 1042 (1975), that the self-help repossession provisions of K.S.A. 84–9–503 do not violate constitutional due process because no State action is present when the State passes a law which, as stated in the first syllabus:

"(a) does not change the common law or previously codified statutory law; (b) does not significantly encourage and involve the state in private action; and (c) does not involve any state official in the prejudgment self-help repossession of collateral."

The Kansas Court said in the body of the opinion:

"Prior cases permitted a mortgagee to use self-help to gain possession if done without a breach of the peace. (*Motor Equipment Co. v. McLaughlin*, 156 Kan. 258, 133 P.2d 149; and *Kaufman v. Kansas Power & Light Co.*, 144 Kan. 283, 58 P.2d 1055). Therefore, K.S.A. 84–9–503

injects no new element upon which a finding of state action may be based.

"Had K.S.A. 84–9–503, supra, changed our law, a finding of state action would still not be required. (*Adams v. Southern California First National Bank, supra,* and *Gary v. Darnell,* 505 F.2d 741 (6th Cir. 1974).) Statutes regulate many forms of private activities in some manner or another. Subjecting all behavior that conforms to some statute to complete due process guarantees would emasculate the state action concept and create chaos in our society. (*Adams v. Southern California First National Bank, supra,* at 330, 331; and *Gibbs v. Titelman, supra,* at 1112.) Recent United States Supreme Court cases have held that conforming to some state regulation is not sufficient state action to trigger application of the Fourteenth Amendment. (*Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 . . . (conforming to utility tariffs).) The same is true when a creditor conforms to 84–9–503, supra; no state action is present.

\*　　\*　　\*　　\*　　\*　　\*

"In summarizing and explaining their conclusion that mere authorization and resulting encouragement does not necessarily result in private action becoming state action, Burke and Reber[2] state:

" 'In determining whether fourteenth amendment state action is present, the focus should always be upon the actual impact of the state law upon the choice to engage in the private conduct. Unless the state law dictates the choice to be made by the party or in some way significantly interferes with the free exercise of that choice, the private conduct and state law are not subject to constitutional restraints under the fourteenth amendment. State laws of a permissive character which authorize private conduct, and because of such authorization perhaps also encourage such conduct, do not satisfy the fourteenth amendment's state action requirement. To adopt "authorization" or "encouragement" in this context as a relevant state action inquiry would subject virtually every form of private ordering pursuant to state statutory, executive and judicial law to constitutional review in the federal court. . . .' (p. 1009.)

"Under this analysis, K.S.A. 84–9–503 cannot be said to significantly encourage and involve the state in private action."

In *Benschoter, supra,* as in the case at bar, no State official, be he judge, clerk of the court or police officer, was involved in the prejudgment self-help repossession of the collateral. The Kansas Court, noting this, found no State action. For the above reasons and because 12A O.S.1971, § 9–503, does not define when and whether the creditor will avail himself of private repossession as opposed to formal court action nor define the means, method, etc., in which the private repossession shall occur, we find no State action in the case at bar.

We next consider whether § 9–503 violates due process of law. The due process clause of the Fourteenth Amendment to the United States Constitution states, in part, as follows:

"Section 1: . . . nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ."

As noted by the Kansas Supreme Court in *Benschoter, supra,* at page 1048, the exact nature of due process guarantees in creditors' rights cases is not clear, citing *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), with *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra.*

It is generally recognized that the buying public is well aware of the fact that the contractual right of self-help repossession as found in the instant case is, in fact, an essential part of every automobile sales contract. This is illustrated by the case of *Messenger v. Sandy Motors Inc.,* 121 N.J.

**2.** Burke and Reber, State Action, Congressional Power and Creditor Rights: An essay on the Fourteenth Amendment, 46 S.Cal.L.Rev. 1003 (1973), 47 S.Cal.L.Rev. (1973).

Super. 1, 295 A.2d 402 (1972), which was an action to enjoin the sale of an automobile that the defendant had repossessed under a written sales contract authorizing the vendor to use self-help repossession upon default. The plaintiff urged that New Jersey's adoption of UCC § 9–503, which is identical to the Oklahoma counterpart, violated the due process clause. In holding that there had been no violation of the due process clause under the Fourteenth Amendment of the Constitution of the State of New Jersey, the Court said:

> "Thousands of cars are repossessed each year. It is difficult to believe the buying public is not well informed of the likelihood of repossession by the bank or finance company if installments are not paid. Plaintiff does not say that he lacked knowledge of such likelihood (of repossession) or that he was unaware of the express terms of his contract; the argument for him is that with or without knowledge of the consequences of default, he and those similarly situated are entitled by the Constitution to a hearing on notice before recaption. I think that argument must be rejected. A car buyer, having a wealth of experience all around him to draw upon and make him aware of the possibility of repossession, is not in a situation where he can properly claim that recaption of his car is a violation of his right to due process because, and only because, no prior hearing on notice to him took place.

> \*　　\*　　\*　　\*　　\*　　\*

> "My conclusion is that if the Fourteenth Amendment has any application at all to this case, there has been no violation of the due process clause."

In support of his position of the unconstitutionality of 12A O.S. 1971, § 9–503, Appellant relies on the case of *Fuentes v. Shevin, supra,* in which the United States Supreme Court held the prejudgment replevin statutes as enacted in Pennsylvania and Florida to be in violation of the Fourteenth Amendment to the United States Constitution. The statutes declared unconstitutional therein allowed the issuance of writs in replevin against the property of another upon the filing of the action and posting of a bond without prior notice to and without prior opportunity to be heard for the debtor at a meaningful time or in a meaningful manner. The property was seized and held by the Sheriff pursuant to a writ issued by the County Court Clerk. The Supreme Court defined the issue presented as follows:

> "The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing before the *State* authorizes its *agents* to seize property in the possession of a person upon the application of another." (Emphasis ours)

*Fuentes, supra,* was distinguished in *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1973), involving a case closely analogous on the facts to that at bar. The Ninth Circuit found in that case that the State of California was not so significantly involved in the self-help repossession procedures undertaken by the creditors to permit the court to find State action or conduct taken under color of State law. The court said therein:

> "\*　\*　\* In the present cases we have action in the nature of summary seizure of personal property, taken by private creditors or their representatives, without having requested state help and without any direct action or review by state officials."

The court said it was this factor which distinguished these cases from *Fuentes,* because there in enforcing the creditor's writ of replevin, issued summarily by a court clerk, a State officer seized the repossessed goods. The court said at page 338:

> "\*　\*　\* We do not read *Fuentes* so broadly that it encompasses all private actions between individuals pursuant to their consensual undertakings. The plurality, speaking for the Court, recognize that at common law in addition to formal state action, a creditor could proceed by self-help. 407 U.S. 67, 79 n. 12, 92 S.Ct. 1983. The minority appears to read the Court's opinion as one clearly distinguish-

ing between the state action rule of *Fuentes* and private repossession.

> " 'It would appear that creditors could withstand attack under today's opinion simply by making clear in the controlling credit instruments that they may retake possession without a hearing, or, for that matter, without resort to judicial process at all.' 407 U.S. at 102, 92 S.Ct. at 2005."

We note that in the absence of statute the right of self-help repossession would continue under the common law and contract in Oklahoma. As such, we think § 9–503 presents a different factual situation from the replevin statutes ruled unconstitutional in *Fuentes, supra,* and could not be declared to create an expression of State policy or involvement under color of State law since the enactment of § 9–503 simply codified pre-existing State law. This was the conclusion the Court reached in *Adams, supra.* Section 9–503 cannot be said to constitute significant State involvement as the statute was neither enacted with the intent of circumventing an individual's rights nor was it enacted to authorize new rights in the creditor.

In short, the enactment of § 9–503 codified a policy of "neutrality" with regard to pre-existing private remedies. It did not confer on creditors any right not theretofore existing, and its repeal would not deprive the creditor from contracting for such right. This is so because Oklahoma has always recognized the right of peaceful self-help repossession as established within the common law. *Stockyards State Bank v. Johnston,* 52 Okl. 32, 152 P. 585 (1915); *J. I. Case Threshing Machine Company v. Barney,* 54 Okl. 686, 154 P. 674 (1916); *Waggoner v. Koon,* 67 Okl. 25, 168 P. 217 (1917); *Firebaugh v. Gunther,* 106 Okl. 131, 233 P. 460 (1925); *Nichols & Shepard Company v. Dunnington,* 118 Okl. 231, 247 P. 353 (1926); *Malone v. Durr,* 178 Okl. 443, 62 P.2d 1254 (1937); *Kroeger v. Ogsden,* 429 P.2d 781 (Okl.1967).

We now consider the question of whether § 9–503 violates Article II, § 7, of the Oklahoma Constitution, which provides:

> "No person shall be deprived of life, liberty, or property, without due process of law."

By virtue of its language, this provision becomes the counterpart of the Fifth Amendment to the United States Constitution.

■ In our view, the aforementioned constitutional provision must be read to provide that the *State of Oklahoma* deprive "no person" of his property without due process of law, as it is the State which was to be limited by the Constitution and not its citizenry. We have recently dealt with this concept of due process under Article II, § 7, in *City of Edmond v. Wakefield,* 537 P.2d 1211 (Okl.1975), where we stated at page 1213:

> " * * * Article II, § 7, of the Oklahoma Constitution, provides that 'No person shall be deprived of life, liberty, or property, without due process of law.' *This section is designed to protect citizens from arbitrary and unreasonable action by the state, State v. Parham,* Okl., 412 P.2d 142 (1966)). * * * "

Since no State action is involved in the instant case, there can be no violation of Article II, § 7, of the Oklahoma Constitution.

■ The next question for our determination is whether the contractual agreement authorizing self-help repossession (Paragraph 19) constitutes a waiver of a constitutional benefit contrary to Article 23, § 8, of the Oklahoma State Constitution.[3]

Because the right of recaption existed at common law without it being stated in the contract, we think Appellant's alleged waiver in the security agreement was inconsequential and did not render the contract null and void. 12A O.S. 1971, § 9–503, authorizing self-help repossession is no

---

**3.** "Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void." Okla.Const. art. 23, § 8.

more than a codification of the common law and pre-existing case law based on a private relationship between debtor and creditor recognized long before it was promulgated by statute. No new rights are created by the promulgation.

Section 9–503, supra, involves nothing which would abridge any fundamental right or waive any benefits of the Oklahoma Constitution, and, therefore, is not in conflict with either the due process clause thereof or Article 23, § 8. The question of whether lack of judicial process under § 9–503 resulted in the deprivation of constitutional rights under either the Fourteenth Amendment or the due process clause of the New Jersey Constitution was considered in *King v. South Jersey National Bank*, 66 N.J. 161, 330 A.2d 1, 10 (1974), where the Court said:

"But we see nothing here that would abridge any fundamental right and thereby come into conflict with the New Jersey Constitution, Article I, par. 1 of our State Constitution (and its predecessor in our 1844 Constitution) is a 'general recognition of those absolute rights of the citizen which were a part of the common law.' *Ransom v. Black*, 54 N.J.L. 446, 24 A. 489 (E. & A.1893) aff'd 65 N.J.L. 688, 51 A. 1109 (E. & A.1893). The standard to be applied in determining whether a fundamental constitutional right exists requires the reviewing court to look to 'the "traditions and (collective) conscience of our people" to determine whether a principle is "so rooted (there) * * * as to be ranked as fundamental." ' * * (cases cited).

"Bargaining in the marketplace and contracting in ways inoffensive to law, morals, honesty or public policy, practices recognized by long tradition and neither created nor forbidden by law, would not seem to us to involve a question of fundamental rights, nor to be offensive to either of the sections of the New Jersey Constitution relied on by plaintiff. It must be remembered that by force of the contract here involved there was a duality of property interest in this automobile, and that '[r]esolution of the due process question' (under both State and Federal

Constitutions) 'must take account not only of the interests of the buyer of the property but those of the seller as well.' *Mitchell v. W. T. Grant Co.*, supra, 416 U.S. at 604, 94 S.Ct. at 1898, 40 L.Ed.2d at 412.

"*The buyer's option not to pay and the security holder's option to retrieve its goods (in the way in which it did), involved no breach of fundamental right, but are measured in effect by the private contractual relationship of the parties, with which the court in these circumstances must not interfere lest it, itself, encroach upon fundamental right by withdrawing from the parties their traditional freedom to contract.*

"In *Griswold*, supra, [*Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510] (which dealt with invasion of the right of privacy in the marriage relationship) the Supreme Court of the United States asserted that it did not sit as a super-legislature to determine the wisdom, need, and propriety of laws that touch economic problems, business affairs, or social conditions." (381 U.S. at 482, 85 S.Ct. at 1680, 14 L.Ed.2d at 513) (Emphasis ours)

The Oklahoma Constitution, Article II, § 15, provides in pertinent part:

"[N]or any law impairing the obligation of contracts, shall ever be passed. . ."

It was recognized in *East Central Oklahoma Electric Coop. v. Public Service Co.*, 469 P.2d 662, 664 (Okl.1970), that there must be a counter-balancing of the constitutional rights guaranteed by Article 23, § 8, and Article II, § 15. This Court said in that case:

"It is well settled that freedom to contract, or the right to enter into a contract, is protected from arbitrary restraint or interference by the due process clauses of state and federal constitutions. . . ."

We, therefore, hold the contractual agreement authorizing self-help did not constitute a waiver of Appellant's constitutional

benefits rendering the contract null and void.

Appellees' final proposition alleges error by the Court of Appeals in remanding this case for new trial on the issue of punitive damages on the basis of Appellee's actions with regard to Appellant's personal property. Appellees assert that Appellant's petition as filed in the Trial Court discloses three separate causes of action, all relating to conversion of his automobile or vehicle, and that there is no allegation or reference in any part of the petition to an alleged unlawful taking or conversion of any personal property belonging to Appellant. The Court of Appeals, however, used this as the basis for awarding Appellant a new trial on the issue of punitive damages.

Since this issue has not heretofore been raised or litigated, we have no basis for its review. *Roberts v. Roberts*, 357 P.2d 980 (Okl.1960); *Tuck v. Buller*, 311 P.2d 212 (Okl.1957). Further, by virtue of our holding herein that § 9–503 is constitutional, there can be no basis for the jury's award of actual damages for the peaceable self-help repossession involved. Therefore, the issues raised concerning punitive damages are moot.

Appellant's original brief contended that the Trial Court erred in sustaining Appellees' motion for judgment notwithstanding the verdict for the reason that the Court had no jurisdiction to render such judgment, and that the taking in this case after refusal of possession by Appellant amounts to a trespass or wrongful conversion. Both arguments must be rejected.

12 O.S.1971, § 698, effective October 27, 1961, provides:

"When a motion for a directed verdict which was made at the close of all of the evidence should have been granted, the court shall, at the request of the moving party, render judgment in his favor though a verdict has been found against him, . . ."

In *Stillwater Milling Co. v. First National Bank of Wewoka*, 391 P.2d 807 (Okl.1964), in interpreting § 698, supra, this Court said:

"The former statute as quoted made no explicit provision for consideration by the trial court of the effect of the evidence when ruling upon a motion notwithstanding the verdict. Nor may the trial court yet weigh the evidence in a case of legal cognizance upon the consideration of such a motion. Such court may, however, under the statute as amended, upon motion for judgment notwithstanding verdict, *upon discovering that there was no evidence upon which to base a verdict in favor of the successful party*, at request of the moving party (upon motion for judgment notwithstanding verdict), render judgment in his favor though verdict has been found against him, or the court may grant a new trial pursuant to authority granted and consonant with conditions laid down in the statute." (Emphasis ours)

The Trial Judge herein, at the time of sustaining Appellees' motion for judgment notwithstanding the verdict, stated:

"I take full responsibility for an error in that in my opinion the demurrer should have been sustained, and I have used the old adage many times that a jury corrects a judge's errors, and I have done this before, let a case go to a jury, and a jury has always corrected the court's error and everyone has had their day in court, and eventually such a thing has to backfire, and it did on me this time, very much. I must be honest in that I felt the demurrer was good and that I took the defendants on to the jury verdict myself."

It is regrettable that the case was not terminated by a sustaining of Appellees' demurrer to Appellant's evidence, but it would be questionable justice indeed to deny a deserved remedy solely because the cause had been erroneously submitted to the jury.

After considering the record, we must agree with the Trial Court that there was an entire absence of proof showing Appellant's right to recover. Appellant's whole case rests upon his contention that the taking in this case after refusal of possession by Appellant amounts to a tres-

pass or a wrongful conversion. We have previously held in *Leedy v. General Motors Acceptance Corporation*, 173 Okl. 445, 48 P.2d 1074 (1935), that the mere fact that the defendant told GMAC not to take possession, except by legal process, does not establish that the defendant in error, GMAC, in securing possession of the automobile resorted to either force, threat, violence, or even stealth. And in *General Motors Acceptance Corporation et al. v. Vincent*, 183 Okl. 547, 83 P.2d 539 (1938), that: "The fact that the owner of a car was not present [when possession was taken] does not constitute a taking by stealth [or] fraud."

More recently this Court held in *Kroeger v. Ogsden*, 429 P.2d 781 (Okl.1967):

"Where the mortgage provisions authorize the mortgagee, in the event of the mortgagor's default, to exercise the option, without notice, of foreclosing [a] mortgage and entering upon the premises where the mortgaged chattel may be, to remove it, this gives the mortgagee a right practically amounting to a license, to go upon the mortgagor's private premises for that purpose, if this can be done in an orderly manner and without a breach of the peace. If the mortgagee does this as a licensee, then, of course, he would not be a trespasser  *  *  *."

The case cited by Appellant, *Ben Cooper Motor Company v. Amay*, 143 Okl. 75, 287 P. 1017 (1930), stands for the proposition that the owner *who is present* does not have to resist by force; that in that instance it would be a jury question of whether or not a breach of peace has taken place. That case is not applicable because here the owner was not present, so there was no question of resistance or lack of resistance for the jury to consider.

Certiorari granted. Opinion of the Court of Appeals vacated and Judgment of Trial Court affirmed.

LAVENDER, V. C. J., WILLIAMS, IRWIN and BERRY, JJ., and BLISS, Special Justice, concur.

SIMMS, J., dissents.

The Honorable C. J. BLISS, Jr., was assigned to act as a Special Justice in this case instead of the Honorable JOHN B. DOOLIN, who certified his disqualification.