Scott EUSTICE, Appellant,

v.

Robert BRAZILLE, d/b/a Tulsa Triumph, and B.S.A., Appellee.

No. 49444.

Supreme Court of Oklahoma.

July 26, 1977.

general provision be limited in its scope to the identical things specifically named. * * *."

Kenn Bradley, Tulsa, for appellant.

Ernest A. Bedford, Tulsa, for appellee.

BARNES, Justice.

On July 24, 1972, Appellant, Scott Eustice, and his mother purchased a motorcycle from Robert Brazille, d/b/a Tulsa Triumph and B. S. A., Appellee, according to the terms of a retail installment contract, for a total sum of $1,868.90. The retail installment contract, which provides the Seller shall retain a security interest in goods sold, was sold and assigned for value and with full recourse by Appellee to the First National Bank and Trust Company of Tulsa (Bank). It was stipulated that the retail installment contract was filed of record by the Bank in the office of the Tulsa County Clerk on July 31, 1972. Thereafter, the monthly payments of $66.55 were made directly to Bank by Appellant. The number of payments to be made covered the period of time through March, 1974.

In October, 1973, Appellant delivered to Jack Meyer, d/b/a Jack's Motorcycle Service, said motorcycle for repairs and remodeling. The Bank's records reflect that the Appellant defaulted on the retail install-

ment contract in October, 1973, by not making the installment payment for that month on time. The records of the Bank indicate six more monthly payments were made subsequent to that time.

Jack Meyer testified it took five to six months to complete repairs on the motorcycle. Upon completion of the repairs and remodeling work, a bill was submitted in the amount of $1,126.88. Appellant admitted he never paid any sum to Jack's Motorcycle Service for repairs.

Appellant contends that before he could pay the bill owed to Jack's Motorcycle Service, and without his knowledge, consent, or authority, Appellee, Robert Brazille, the original seller, paid the $1,126.88 sum owed and was delivered the Appellant's motorcycle by Jack Meyer. Appellant further contends that at about the same time, without his consent, knowledge, or authority, the Appellee paid the sum of $300.64 to the Bank, which was the balance then due and owing under the terms of the original security agreement.

Appellee, Ray Brazille, testified that following default on the retail installment contract, Bank notified him his recourse was due and made oral demand for payment of the balance due under the contract.

Wanda Stowe, Assistant Supervisor in the Collections and Recovery Department of Bank, testified the Bank's records show the retail installment contract was paid off in full April 3, 1974, and orally assigned back to Appellee, Tulsa Triumph, April 4, 1974, since it was a full recourse note.

Jack Meyer testified he was contacted by Appellee, Ray Brazille, concerning repossession of the motorcycle. He said Brazille paid the bill on the motorcycle and obtained a receipt therefor, after Meyer checked with Bank to make certain Brazille was authorized to repossess the motorcycle. Meyer testified he was not presented with any release of Bank's security interest by Brazille at the time of repossession.

It is admitted that there was no written reassignment of the retail installment contract by Bank to Appellee Brazille, and it

has never been released, but remains on file in the Tulsa County Clerk's office in the name of the Bank.

Appellant made demand upon Appellee for return of the motorcycle upon learning in April, 1974, that the motorcycle was at Tulsa Triumph, and after discovery that his account with the Bank had been paid in full. Said demand was refused, unless Appellant paid the balance due for charges previously paid by Appellee.

Appellant then filed this cause of action against Appellee on June 12, 1974, for the alleged illegal taking and conversion of the motorcycle.

Appellee contends the motorcycle was not taken from Jack's Motorcycle Service before Appellant could pay the bill, but rather that demand and notice had been given to Appellant of the balance due two to three months prior thereto.

The Trial Court held for the Appellee, concluding that the Appellee purchased back the retail installment obligation from the Bank; that he stood in the shoes of the Bank and did have a right to repossess the property. The Trial Court said Appellee had the right to take possession under 12A O.S.1971, § 9–503, if he could do so peaceably since the note was in default. The Trial Judge noted he was unable to find any requirement in the Uniform Commercial Code as adopted in Oklahoma that there be any written reassignment back to the original secured party before said party had the right to possession.

Appellant brings this appeal seeking reversal of the Trial Court's judgment of dismissal and remand with instructions to render a directed verdict for the Appellant for $3,000.00 actual damages, punitive damages not to exceed $25,000.00, and costs of this appeal.

Appellant contends Appellee committed an act of conversion by paying off a repair bill without his consent or authority and taking his motorcycle and converting it to his own use after demand was made upon him for its return. Appellee admits still having possession of the motorcycle in ques-

tion, but asserts his actions were permissible under the retail installment contract and as a result of the self-help repossession statute, 12A O.S.1971, § 9–503.

■ Appellant, on the other hand, contends this Court held the self-help repossession statute is unconstitutional even if it is in the security agreement. This contention was answered in our recent decision, *Helfinstine v. Martin*, 561 P.2d 951 (Okl.1977), where we hold self-help repossession to be constitutional.

■ Appellant asserts that if Appellee is a secured party, he is liable at the debtor's option in conversion under 12A O.S.1971, § 9–505. That statute sets forth the actions a secured party must take, who has taken possession of collateral by reference to § 9–504, wherein it makes provision for the disposition of said property, and if he fails to do so within 90 days after taking possession, the debtor, at his option, may recover in conversion. Appellant urges that since Appellee took possession of the motorcycle in April, 1974, and still has not disposed of it under § 9–504, supra, Appellant now has the option of suing for conversion.

We agree with the Trial Court that 12A O.S.1971, § 9–505, does not apply to this cause of action because the issue was not pleaded in the petition nor raised until final argument in the trial of the case.

Without reference to any statute or case law, Appellant further contends Oklahoma law makes no provision for an oral assignment by Bank to Appellee Brazille; that Bank became the secured party of record upon receiving the assignment and filing it with the Court Clerk; and that this has not been changed.

■ We agree with the Trial Court that Appellee herein is a secured party under § 9–503. A secured party is defined in 12A O.S.1971, § 9–105(1)(i), as follows:

" 'Secured party' means a lender, seller or other person in whose favor there is a security interest, including a person to whom accounts, contract rights or chattel paper have been sold. * * * "

It is to be noted that there is no requirement that the sale be evidenced by writing. When Appellee assigned his rights under the retail installment contract to the Bank with recourse, and then, after Appellant's default, bought back the contract, he obtained from the Bank all the rights and interest of the Bank in that chattel paper which was purchased. We find that "security interest" includes any interest of a buyer of accounts, chattel paper, or contract rights, which is subject to Article 9, 12A O.S.1971, § 1–201(37). The definition of "purchase" as set forth in 12A O.S.1971, § 1–201(32), "includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or other voluntary transaction creating an interest in property." Based upon these statutory citations, we think Appellee purchased chattel paper from the Bank and, therefore, became a secured party entitled to self-help repossession under 12A O.S.1971, § 9–503.

■ As to Appellant's contention that Appellee committed an act of conversion of his motorcycle by paying off a repair bill without his consent or authority, taking possession thereof, and converting it to his own use, we find that this action was authorized by 12A O.S.1971, § 9–506, as well as 42 O.S.1971, § 18.

Title 12A O.S.1971, § 9–506, provides:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9–504 or before the obligation has been discharged under Section 9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and, to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

Title 42 O.S.1971, § 18, provides:

"Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

The action of the Trial Court is affirmed.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, BERRY, SIMMS and DOOLIN, JJ., concur.